insurer. Fairfax's underwriting revenues slowed and never reached the levels they would have but for the scheme's attack. The same reputational damage caused Fairfax to seek financing for its operations and growth on far more expensive terms than would have otherwise been necessary. As a direct result of the harm the Enterprise's scheme inflicted on Fairfax's underwriting efforts and ability to do business, Fairfax was forced to scale back its strategic initiatives and plans to grow and expand its business.

148. The Enterprise's misinformation campaign and other manipulative conduct also substantially contributed to many of the regulatory investigations and class action lawsuits initiated against Fairfax and the substantial amounts of money and management attention and focus that were required to address those proceedings.

149. The increased costs and expenses, lost profits, harm to reputation, lost acquisition opportunities, and diminished enterprise value that the Enterprise's scheme, as carried out by each of the defendants, directly and proximately inflicted upon plaintiffs is no less than $6 billion.

## CAUSES OF ACTION

### COUNT I

### RACKETEERING IN VIOLATION OF N.J.S.A. 2C: 41-2(c)
### (AGAINST ALL DEFENDANTS)

150. Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

151. Defendants are persons as that term is used in N.J.S.A. 2C:41-1(b).

152. Defendants comprise an association, associations and/or are associated-in-fact Enterprise as those terms are defined in N.J.S.A. 2C:41-1(c). The Enterprise has an existence beyond that which is merely necessary to commit predicate acts and, among other things,

oversaw and coordinated (and continues to oversee and coordinate) the commission of numerous predicate acts on an on-going basis in furtherance of the scheme and efforts to conceal the scheme. The Enterprise was operated, managed and controlled by each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless.

153. The conduct, acts, and omissions of the defendants set forth above were an integral part of the overall pattern and practices described herein, including using the facilities of United States interstate commerce to reap vast profits from their scheme to issue false and misleading statements to the public and, thereby, cause enormous harm to the plaintiffs, their employees and investors.

154. The Enterprise and its scheme had and continue to have substantial ties to New Jersey, including the planning and execution of central elements of the scheme in New Jersey and the infliction of enormous monetary and other harm as a direct and proximate result of the scheme in New Jersey, including but not limited to the following:

- The Enterprise's attack on C&F was directly targeted at a corporation with its principal place of business in New Jersey. Indeed, as set forth more fully above, the interference with, and injury to, this New Jersey business was an essential element of the Enterprise's scheme.

- The scheme was in fact successful in significantly injuring this New Jersey business by interfering with its access to credit and financing, damaging its business reputation and critical business relationships, and causing it to surrender lucrative business it would otherwise have enjoyed.

- The Enterprise's scheme also resulted in substantial losses on the part of New Jersey shareholders who had invested in the publicly-traded parent corporation of C&F, a New Jersey business.

- Many additional New Jersey companies were also targeted as part of the scheme with the same associated categories of injury.

- Critical elements of the scheme were executed in New Jersey, where several members of the Enterprise reside, do business, and conduct some or all of their Enterprise activities.

61

- Similarly, during the period covered by this complaint, the Rocker Defendants operated out of Millburn, New Jersey offices and supported the scheme out of those New Jersey offices.

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants and Trinity Defendants participated in the Enterprise's scheme on behalf of various limited partners who reside or resided in New Jersey and who profited significantly from the Enterprise's scheme. Moreover, each of these defendants frequently had communications and coordinated with the Morgan Keegan Defendants and caused the Morgan Keegan Defendants to disseminate its reports to numerous clients, investors, journalists, and media outlets located throughout New Jersey.

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants and Trinity Defendants frequently had communications and coordinated with Lawless, a New Jersey resident, and caused Lawless to disseminate reports and information to numerous clients, investors, journalists, and media outlets located throughout New Jersey.

155. Through the conduct and the acts and omissions set forth above, the defendants knowingly and intentionally:

(a) Committed and aided and abetted fraud in connection with the purchase and/or sale of securities in violation of N.J.S.A. 49:3-71 and N.J.S.A. 2C:2-6, which conduct also violated 15 U.S.C. §§ 78j and 78ff, and 17 C.F.R. § 240.10b-5, which are incorporated as "racketeering activity" under the New Jersey RICO statute pursuant to N.J.S.A. 2C:41-1(a)(2);

(b) committed and aided and abetted the commission of deceptive business practices in violation of N.J.S.A. 2C:21-7 and 2C:2-6;

(c) committed and aided and abetted the commission of commercial bribery in violation of N.J.S.A. 2C:21-10 and 2C:2-6;

(d) Used the mails in United States or foreign commerce to commit a fraud in violation of 18 U.S.C. § 1341, which is incorporated as "racketeering activity" under the New Jersey RICO statute pursuant to N.J.S.A. 2C:41-1(a)(2); and

(e)     Used the wires in United States or foreign commerce to commit a fraud in violation of 18 U.S.C. § 1343, which is incorporated as "racketeering activity" under the New Jersey RICO statute pursuant to N.J.S.A. 2C:41-1(a)(2);

all of which are "predicate acts" under N.J.S.A. 2C:41-1(a).

156.    The defendants' conduct involved "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity" and therefore constituted a "pattern of racketeering" within the meaning of N.J.S.A. 2C:41-1(d)(1).

157.    As set forth above, this pattern consisted of repeated, continuous acts that had the same or similar purposes, results, participants, victims or methods of commission, and are interrelated by distinguishing characteristics rather than isolated events, within the meaning of N.J.S.A. 2C:41-1(d)(2).

158.    It was the purpose of the Enterprise to create and disseminate false and misleading reports and information concerning the businesses of each of the plaintiffs, and other companies, with the objective of harming those companies and profiting from that harm through the short-selling of publicly-traded securities issued by those companies, including Fairfax. This extensive market-manipulation scheme was intended to, and did, provide substantial profits to the members of the Enterprise. The Enterprise operated by the defendants achieved these objectives by the conduct of racketeering activity, including:

- engaging in blatant manipulation of the market for the publicly-traded securities of Fairfax and other companies;
- commissioning false and misleading reports concerning each of the plaintiffs and other companies;
- manipulating the issuance of such reports to benefit other Enterprise members and harm others to whom members of the Enterprise owed fiduciary and other duties;

63

- purchasing and/or selling securities in order to profit from the manipulated timing of the issuance of the fraudulent reports;

- charging Enterprise members and others substantial fees to receive the false and misleading information and reports that were created by Enterprise members;

- issuing analyst reports that falsely purported to be "independent" but were, in fact, premeditated attacks on a number of companies, including Fairfax;

- fraudulently misrepresenting that Fairfax shares were overvalued due to, among others things, corporate malfeasance and aggressive accounting by the plaintiffs;

- planting false and misleading information concerning the plaintiffs, and other companies with securities analysts, regulators, rating agencies, customers and investors; and

- rebroadcasting and disseminating that false and misleading information to the media and the public.

159.    Beginning at least as early as December 2002, and continuing until the date of this complaint, in furtherance of and for the purpose of executing and attempting to execute the described schemes and artifices to defraud, each of the defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce and the U.S. mails, by both making and causing to be made wire communications and mailings.  These wire communications and mailings were made, inter alia, for the purposes of (i) communicating with one another to effectuate the dissemination of false and misleading information necessary to perpetrate the scheme to harm the business of Fairfax and other companies and to artificially depress those companies' share prices; (ii) disseminating false and misleading analyst reports and other statements concerning the business and stock of Fairfax and other companies; (iii) wiring monies periodically to compensate purportedly independent analysts; and (iv) coordinating their manipulation of the market for Fairfax stock.

160.    Each such use of a wire communication and/or mailing in connection with the described schemes and artifices to defraud constitutes a separate and distinct violation of

64

N.J.S.A. 2C:41-1(a)(2), by virtue of violating the incorporated federal predicate acts proscribed by 18 U.S.C. §§ 1341 and/or 1343. The defendants used the wires and mails to perpetrate their fraudulent scheme and to disseminate the fraudulent reports attacking Fairfax and other companies. While plaintiffs do not have full knowledge of the extent of the use of the wires and mails by the Enterprise in furtherance of the scheme, the following charts show some, but not all of those violations.

161.    The Morgan Keegan Defendants disseminated each of the approximately 64 Reports and other Fairfax related updates as set forth in Table A, by electronic mail and U.S. mail to their clients and other Enterprise members. The Morgan Keegan Defendants distributed each of these reports to numerous clients and no fewer than the 25 Enterprise members set forth in Table B. The distribution of these reports therefore constitutes more than 1600 separate fraudulent communications:

| TABLE A<br>MORGAN KEEGAN REPORTS DISTRIBUTED | |
|---|---|
| Company Report/Bulletin | Date |
| 1.   Report Initiating FFH Coverage | 1/16/03 |
| 2.   FFH Equity Research Note: Initiating Coverage | 1/17/03 |
| 3.   FFH Equity Research Note: Company Update | 1/30/03 |
| 4.   FFH Equity Research Note: Company Update | 2/3/03 |
| 5.   FFH Equity Research Note: Analysis of Sales/Earnings | 2/11/03 |
| 6.   FFH Equity Research Note: Company Update | 3/10/03 |
| 7.   FFH Equity Research Note: Company Update | 4/3/03 |
| 8.   FFH Equity Research Note: Analysis of Sales/Earnings | 5/6/03 |
| 9.   FFH Equity Research Note: Analysis of Sales/Earnings | 5/14/03 |
| 10.   FFH Equity Research Note: Analysis of Sales/Earnings | 8/26/03 |
| 11.   FFH Equity Research Note: Analysis of Sales/Earnings | 10/8/03 |
| 12.   FFH Equity Research Note: Analysis of Sales/Earnings | 11/26/03 |
| 13.   FFH Equity Research Note: Analysis of Sales/Earnings | 2/17/04 |
| 14.   FFH Equity Research Note: Company News | 2/24/04 |
| 15.   FFH Equity Research Note: Analysis of Sales/Earnings | 3/12/04 |
| 16.   FFH Equity Research Note: Analysis of Sales/Earnings | 8/9/04 |
| 17.   FFH Equity Research Note: Accounting Discussions | 8/11/04 |
| 18.   FFH Equity Research Note: Analysis of Sales/Earnings | 8/19/04 |
| 19.   FFH Equity Research Note: Accounting Discussion | 8/27/04 |
| 20.   FFH Equity Research Note: Analysis of Sales/Earnings | 9/7/04 |
| 21.   FFH Equity Research Note: Industry Note | 9/7/04 |
| 22.   FFH Equity Research Note: Estimate Change | 10/5/04 |
| 23.   FFH Equity Research Note: Analysis of Sales/Earnings | 10/29/04 |
| 24.   FFH Equity Research Note: Accounting Discussion | 11/3/04 |
| 25.   FFH Equity Research Note: Accounting Discussion | 11/24/04 |
| 26.   FFH Equity Research Note: Accounting Discussion | 1/3/05 |

65

| | | |
|---|---|---|
| 27. | FFH Equity Research Note: Analysis of Sales/Earnings | 2/11/05 |
| 28. | FFH Equity Research Note: Analysis of Sales/Earnings | 5/2/05 |
| 29. | FFH Equity Research Note: Accounting Discussion | 6/28/05 |
| 30. | FFH Equity Research Note: Accounting Discussion | 7/13/05 |
| 31. | FFH Equity Research Note: First Look | 7/29/05 |
| 32. | FFH Equity Research Note: Accounting Discussion | 7/29/05 |
| 33. | FFH Equity Research Note: Analysis of Sales/Earnings | 7/29/05 |
| 34. | FFH Equity Research Note: Industry Note | 9/2/05 |
| 35. | FFH Equity Research Note: Estimate Change | 9/6/05 |
| 36. | FFH Equity Research Note: mid-day look | 9/6/05 |
| 37. | FFH Equity Research Note: Estimate Change | 9/12/05 |
| 38. | FFH Equity Research Note: Industry Note | 10/6/05 |
| 39. | FFH Equity Research Note: Company News | 10/10/05 |
| 40. | FFH Equity Research Note: Analysis of Sales/Earnings | 10/31/05 |
| 41. | FFH Equity Research Note: Accounting Discussion | 11/3/05 |
| 42. | FFH Equity Research Note: Estimate Change | 1/2/05 |
| 43. | FFH Equity Research Note: Pre-Results Comment | 1/27/06 |
| 44. | FFH Equity Research Note: Company News | 2/3/06 |
| 45. | FFH Equity Research Note: mid-day look | 2/10/06 |
| 46. | FFH Equity Research Note: Analysis of Sales/Earnings | 2/10/06 |
| 47. | FFH Equity Research Note: Accounting Discussion | 2/16/06 |
| 48. | FFH Equity Research Note: mid-day look | 2/17/06 |
| 49. | FFH Equity Research Note: Accounting Discussion | 2/23/06 |
| 50. | FFH Equity Research Note: Company News | 3/2/06 |
| 51. | FFH Equity Research Note: Accounting Discussion | 3/6/06 |
| 52. | FFH Equity Research Note: mid-day look | 3/20/06 |
| 53. | FFH Equity Research Note: Company News | 3/20/06 |
| 54. | FFH Equity Research Note: Accounting Discussion | 3/29/60 |
| 55. | FFH Equity Research Note: Strategic Review | 4/10/06 |
| 56. | FFH Equity Research Note: Accounting Discussion | 4/12/06 |
| 57. | FFH Equity Research Note: mid-day look | 4/17/06 |
| 58. | FFH Equity Research Note: Accounting Discussion | 4/17/06 |
| 59. | FFH Equity Research Note: first look | 4/28/06 |
| 60. | FFH Equity Research Note: Analysis of Sales/Earnings | 5/1/06 |
| 61. | FFH Equity Research Note: mid-day look | 5/8/06 |
| 62. | FFH Equity Research Note: Accounting Discussion | 5/8/06 |
| 63. | FFH Equity Research Note: Industry Note | 5/25/06 |
| 64. | FFH: Pre Results Comments | 7/21/06 |

| TABLE B | | |
|---|---|---|
| RECIPIENTS OF MORGAN KEEGAN REPORTS | | |
| COMPANY/INDIVIDUAL | ADDRESS | CITY/STATE |
| 1. Max Bernstein | 401 East 34th Street, 35G | New York, NY |
| 2. James Chanos | 350 E. 79th Street, 35A | New York, NY |
| 3. Spyro Contogouris | 12 East 78th Street | New York, NY |
| 4. Exis Capital Management | 767 3d Avenue | New York, NY |
| 5. Greenlight Capital, LLC | 140 East 45th Street | New York, NY |
| 6. John Hempton | 84 Hopetoun Avenue | Sydey, Australia |
| 7. Brett Lawless | 860 Old Chester Road | Far Hills, NJ |
| 8. Lighthouse Capital Management, Inc. | 1000 Memorial Drive, | Houston, Texas |
| 9. Lone Pine Capital Management, LLC | Two Greenwich Plaza | Grenwich, CT |
| 10. Jeff Perry | 9 Wayside Lane | Scasdale, NY |
| 11. Pequot Capital Management | 500 Nyala Farm Rd | Weport , CT |
| 12. Perry Capital Management | 599 Lexington Avenue | New York, NY |
| 13. Platinum Asset Management | 55 Harrington Street | Sydey, Australia |
| 14. David Rocker | 43 Minnisink Road | Shd Hills, NJ |
| 15. Rocker Partners | 374 Millburn Avenue | Milurn, NJ |
| 16. SAC Capital Advisors, LLC | 72 Cummings Point Road | Staford, CT |
| 17. SAC Capital Associates, LLC | 72 Cummings Point Road | Staford, CT |

66

| 18. SAC Capital Management, LLC | 72 Cummings Point Road | Stamford, CT |
|---|---|---|
| 19. Adam D. Sender | 109 Greene Street, 4B | New York, NY |
| 20. Sigma Capital Management, LLC | 540 Madison Avenue | New York, NY |
| 21. Third Point, LLC | 390 Park Avenue | New York, NY |
| 22. Trinity Capital Management, Inc. | 1819 Goodwin Street | Jacksonville, FL |
| 23. Trinity Fund, Ltd. | 1620 Independence Square | Jacksonville, FL |
| 24. Viking Capital Management | 280 Park Avenue | New York, NY |
| 25. Ziff Brothers Investments | 153 East 53 Street — | New York, NY |

162. Enterprise member Lawless also disseminated false and misleading reports concerning Fairfax. For example, as set forth above, Lawless disseminated such a false and misleading report on March 2, 2005. That report was distributed to no fewer than the 25 Enterprise Members set forth in Table B above, as well as to many other individuals and entities throughout the United States and internationally.

163. Enterprise members spoke on the phone, used electronic mail and U.S. mail regularly to conduct the activities of the Enterprise. The total number of phone calls, e-mails and mailings and the identities of all Enterprise members is not yet known, but Enterprise members engaged in the following phone calls, e-mails, and U.S. mailings as set forth in Table C, each constituting a separate mail or wire communication in furtherance of the fraudulent scheme:

| TABLE C MAIL AND WIRE COMMUNICATIONS | | | | |
|---|---|---|---|---|
| Sender/Caller | Recipient | Date | Subject | Method |
| Max Bernstein | Fairfax CFO | 9/6/05 | Seeking comment on SEC subpoena to Fairfax | Phone call |
| Spyro Contogouris on behalf of "MI4" | Fairfax shareholders, analysts, and rating agencies | 10/7/05 | "FFH Morning Note" | U.S. mail and E-mail |
| Stocklemon.com | N/A | 10/21/05 | Posted report "Where There's Smoke There's Fire...Could Fairfax Financial Be the Next Refco?????" | Website |
| Max Bernstein | Prem Watsa | 11/9/05 | E-mail attaching an article regarding the Fugitive Marty Frankel | E-mail |
| Max Bernstein as Monty Gardener | Prem Watsa | 11/10/05 | "EX REFCO CEO BENNETT CHARGED WITH SECURITIES FRAUD, OTHERS CHARGED IN 8-COUNT INDICTMENT" | E-mail |

67

| Max Bernstein | [name omitted] | 11/15/05 | Interest in Prem Watsa and Fairfax | Phone call |
|---|---|---|---|---|
| Max Bernstein as Monty Gardener | Prem Watsa | 11/15/05 | "EX REFCO CEO BENNETT CHARGED WITH SECURITIES FRAUD, OTHERS CHARGED IN 8-COUNT INDICTMENT" | E-mail |
| Max Bernstein | Fairfax shareholders, analysts, rating agencies and media | 12/16/05 | Attaching document "Trevor's Travels: The Kingsmead Fraud – Another Enron-like, off balance sheet deception." | E-mail |
| Max Bernstein as Robert Rafelson | Prem Watsa | 12/16/05 | Asking if Prem was using shareholder money to fuel the corporate jet for his family's personal use. | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/19/05 | "To Fairfax or Whatever It Is Today" attaching article regarding the Fugitive Marty Frankel sent to Prem Watsa on 11/9/05 | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/19/05 | "Personal Use of the Fairfax Corporate Jet by Prem Watsa and Family" and attaching article regarding Marty Frankel's use of the corporate jet. | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/21/05 | Resending 12/19/05 email "To Fairfax or Whatever It Is Today" attaching article regarding the Fugitive Marty Frankel sent to Prem Watsa on 11/9/05 | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/21/05 | Resending 12/19/05 email "Personal Use of the Fairfax Corporate Jet by Prem Watsa and Family" and attaching article regarding Marty Frankel's use of the corporate jet. | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/29/05 | Resending 12/19/05 email "To Fairfax or Whatever It Is Today" attaching article regarding the Fugitive Marty Frankel sent to Prem Watsa on 11/9/05 | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/29/05 | Resending 12/19/05 email "Personal Use of the Fairfax Corporate Jet by Prem Watsa and Family" and attaching article regarding Marty Frankel's use of the corporate jet. | E-mail |
| Max Bernstein as Dick Tracey | [name omitted] | 12/30/05 | Resending 12/19/05 email "To Fairfax or Whatever It Is Today" attaching article regarding the Fugitive Marty Frankel sent to Prem Watsa on 11/9/05 | E-mail |
| Max Bernstein as | [name omitted] | 12/30/05 | Resending 12/19/05 email | E-mail |

68

| | | | | |
|---|---|---|---|---|
| Dick Tracey | | | "Personal Use of the Fairfax Corporate Jet by Prem Watsa and Family" and attaching article regarding Marty Frankel's use of the corporate jet. | |
| Spyro Contogouris | N/A | 12/30/05 | Launch of www.premwatsa.com, www.premwatsa.net, www.Premwatsa.co.uk | Websites |
| Max Bernstein | Tucker Hall | 1/30/06 | Demanding information concerning certain FFH subsidiaries | Phone call |
| Exis, Spyro Contogouris and Max Bernstein | Fairfax shareholders, analysts, ratings agencies and media, including Brett Lawless and John Gwynn | January 2006 | Acting as unbiased analysts Enterprise member contact Fairfax shareholders, analysts, ratings agencies and media, including Bret Lawless and John Gwynn to spread their misinformation. | Phone call |
| Unknown | N/A | 2/14/06-2/16/06 | Six one minute "Attacks" on Fairfax website aimed at obtaining otherwise compromising the Fairfax web server | E-mail |
| Max Bernstein as Robert Rafael | Chris Clark of Price Waterhouse | 3/2/06 | Attaching documents purporting to show that Price Waterhouse knew of material inflation in the financial statements of FFHL (Luxembourg) S.a.r.l. | E-mail |
| Max Bernstein as Robert Rafael | Dennis Nally of Price Waterhouse | 3/2/06 | Attaching documents purporting to show that Price Waterhouse knew of material inflation in the financial statements of FFHL (Luxembourg) S.a.r.l. | E-mail |
| Max Bernstein as Robert Rafael | Chris Clark of Price Waterhouse | 3/6/06 | Attaching documents purporting to show that Price Waterhouse knew of material inflation in the financial statements of FFHL (Luxembourg) S.a.r.l. | E-mail |
| Max Bernstein as Robert Rafael | Dennis Nally of Price Waterhouse | 3/6/06 | Attaching documents purporting to show that Price Waterhouse knew of material inflation in the financial statements of FFHL (Luxembourg) S.a.r.l. | E-mail |
| Spyro Contogouris from spyromi4@aim.com | Chris Clark of Price Waterhouse | 3/9/06 | Purporting to bring to auditors' attention that a PWC affiliate in India resigned as auditor of a company in which Odyssey Re had made an investment | E-mail |
| Spyro Contogouris from spyromi4@aim.com | Dennis Nally of Price Waterhouse | 3/9/06 | Purporting to bring to auditors' attention that a PWC affiliate in India resigned as auditor of a company in which Odyssey Re had made an investment | E-mail |

| Spyro Contogouris from spyromi4@aim.com | Catherine Regan, General Counsel for Fairfax European Subsidiary | 3/9/06 | Email stating "I am reading about you in the Lawer [sic] News and am stunned by the fact that you are posing next to the largest nose I have ever seen..." | E-mail |
|---|---|---|---|---|
| Spyro Contogouris from spyromi4@aim.com | Andy Barnard | 3/10/ 06 | | E-mail |
| Spyro Contogouris from spyromi4@aim.com | Rob Giammarco | 3/10/ 06 | | E-mail |
| Spyro Contogouris from spyromi4@aim.com | Greg Taylor, Fairfax CFO | 3/10/06 | | E-mail |
| Anonymous | Prem Watsa | 3/16/06 | Audio Clip from Harry Potter | Phone call |
| Anonymous | Greg Taylor | 3/16/06 | Audio Clip from Harry Potter | Phone call |
| maestro099 | N/A | 3/21/06 | Post on FFH investor chat board reported "Bad news coming" | Web post |
| Brett Lawless | Fairfax Shareholders | 3/29/06 | Giving out information on Fairfax ostensibly in his capacity as CFRA analyst | E-mail |
| Brett Lawless | Fairfax Shareholders | 3/29/06 | Giving out information on Fairfax ostensibly in his capacity as CFRA analyst | Phone call |

164.    Enterprise members at various times participated in Fairfax quarterly conference calls.  The total number of calls and the identities of each participant is not yet known, but the Enterprise members participated in the following quarterly conference calls, as set forth in Table D, each call into the conference constituting a communication by wire in furtherance of the fraudulent scheme:

| TABLE D FAIRFAX CONFERENCE CALLS | |
|---|---|
| Conference Call | Enterprise Participants |
| 2/11/03 | Greenlight Capital John Gwynn John Hempton Brett Lawless Lone Pine Morgan Keegan Perry Capital Platinum Asset Management SAC Capital Sigma Capital Management Third Point |
| 2/24/03 | SAC Capital |

| | |
|---|---|
| 5/5/03 | James Chanos<br>Greenlight Capital<br>John Hempton<br>Brett Lawless<br>Platinum Asset Management<br>SAC Capital<br>Sigma Capital<br>Third Point |
| 5/16/03 | Greenlight Capital |
| 8/1/03 | John Gwynn<br>Lone Pine<br>Morgan Keegan<br>Sigma Capital |
| 8/15/03 | Lighthouse Private Client<br>Greenlight Capital |
| 11/3/03 | John Gwynn<br>Lighthouse<br>Lone Pine<br>Morgan Keegan |
| 11/17/03 | Greenlight Capital<br>John Hempton<br>Brett Lawless<br>Platinum Asset Management |
| 2/9/04 | Greenlight Capital<br>John Gwynn<br>John Hempton<br>Brett Lawless<br>Lighthouse<br>Morgan Keegan<br>Platinum Asset Management<br>Sigma Capital<br>Ziff Brothers |
| 2/23/04 | Lone Pine<br>Morgan Keegan |
| 4/30/04 | John Gwynn<br>John Hempton<br>Brett Lawless<br>Lone Pine<br>Morgan Keegan<br>Pequot Capital<br>Platinum Asset Management<br>SAC Capital Advisors<br>Ziff Brothers |
| 5/14/04 | Brett Lawless<br>SAC Capital Advisors |
| 7/30/04 | John Gwynn<br>Brett Lawless<br>Lone Pine<br>Morgan Keegan<br>SAC Capital<br>Sigma Capital Management |
| 8/13/04 | Brett Lawless |
| 10/29/04 | John Gwynn<br>John Hempton<br>Brett Lawless<br>Lone Pine<br>Morgan Keegan<br>Platinum Asset Management<br>SAC Capital |
| 2/11/05 | John Gwynn<br>Brett Lawless |

|  |  |
|---|---|
|  | Lone Pine<br>Morgan Keegan |
| 4/29/05 | John Gwynn<br>Brett Lawless<br>Lone Pine<br>Morgan Keegan<br>Rocker Partners<br>Ziff Brothers |
| 7/29/05 | Spyro Contogouris<br>Exis<br>John Gwynn<br>Brett Lawless<br>Lone Pine<br>Morgan Keegan<br>Rocker Partners<br>Ziff Brothers |
| 10/28/05 | Spyro Contogouris<br>Exis<br>John Gwynn<br>Lighthouse Private Client Group<br>Lone Pine<br>Morgan Keegan<br>Jeff Perry<br>Third Point<br>Ziff Brothers |
| 2/10/06 | John Gwynn<br>Morgan Keegan<br>Ziff Brothers |

165.     As set forth herein, as part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud plaintiffs, among others, each of the defendants knowingly, willfully, and unlawfully made misrepresentations or omissions of material fact for the purpose of harming plaintiffs' businesses and inducing Fairfax shareholders and others to rapidly sell their Fairfax shares and artificially depress the price of the common stock. Such misrepresentations and omissions, and the aiding and abetting such misrepresentations and omissions, constitute securities fraud in violation of N.J.S.A. 49:3-71 and N.J.S.A. 2C:2-6, and independently constitute violations of 15 U.S.C. §§ 78j and 78ff.

166.     Defendants' activities set forth herein, including the dissemination of false and misleading reports that fail to disclose the true source and intent of their information, also constitute violations of N.J.S.A. 2C:21-7(i).

167.    As part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud Fairfax, among others, the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless knowingly, willfully, and unlawfully engaged in commercial bribery and breach of duty to act disinterestedly in violation of N.J.S.A. 2C:21-10 by accepting and agreeing to accept certain benefits as consideration for violating or agreeing to violate their duties of fidelity to their clients, by participating in a scheme that put their clients at serious financial risk and resulted in substantial financial injury to their clients. As part of their pattern of racketeering activities and in furtherance of and to assist their scheme and artifice to defraud plaintiffs, among others, The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless Defendants knowingly, willfully and unlawfully engaged in commercial bribery in violation of N.J.S.A. 2C:21-10 by inducing other Enterprise members to accept and agreeing to accept certain benefits as consideration for violating or agreeing to violate their duties of fidelity as independent analysts for their clients.

168.    From at least 2002 and continuing to the present, the defendants repeatedly engaged in illegal acts under N.J.S.A. 49:3-71, N.J.S.A. 2C:2-6, N.J.S.A. 2C:21-7 and 2C:2-6 (relating to deceptive business practices), and N.J.S.A. 2C:21-10 and 2C:2-6 (relating to commercial bribery); the same conduct or other conduct by the defendants as described herein also violated 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 15 U.S.C. §§ 78j and 78ff, and 17 C.F.R. § 240.10b-5 (relating to securities fraud). The defendants used the United States mails, as well as wire and other communications in interstate and foreign commerce in connection with these acts and thereby continually engaged in

73

"racketeering activity" within the meaning of N.J.S.A. 2C:41-1(a) and 2C:41-1(d), including by engaging in conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(B), which is incorporated by reference in N.J.S.A. 2C:41-1(a)(2), in the course of the described criminal schemes.

169.    The repeated violations by the defendants set forth herein extended over a period of years and involved distinct and independent criminal acts.  They were neither isolated nor sporadic events, but involved the regular and repeated violation of law to accomplish the defendants' desired ends in the course of continuing the fraudulent business of the Enterprise.

170.    These acts were related to each other by virtue of (a) common participants; (b) common types of victims; and (c) the common purpose and common result of concerted attacks on companies through the creation and dissemination of false and misleading reports concerning their businesses and stock, resulting in vast trading profits for the Enterprise members at the expense of the target companies, their employees and shareholders.

171.    These repeated and continuing violations of N.J.S.A. 2C:41-1(a) and 2C:41-1(d) were neither isolated nor sporadic events, but involve a callous and calculated series of repeated violations of law in order to conceal and promote criminal activity in the course of the continuing business of the Enterprise.  These activities therefore constitute a further component of a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-1(a) and 2C:41-1(d).

172.    Each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless were, or were employed by, active participants in the Enterprise and all of them knowingly and intentionally violated or aided violations of N.J.S.A. 2C:41-2(c) by directly or

indirectly conducting or participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

173. By the conduct, acts, and omissions set forth in detail above, each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless also aided and abetted the other Enterprise members in violating N.J.S.A. 2C:41-2(c).

174. Each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless aided, abetted, counseled, induced, and procured the commission of the wrongful acts set forth above and may therefore be held liable as a principal, to the same extent as the other defendants.

175. Each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless were not merely reckless or negligent in their conduct. Each defendant engaged in the conduct, acts and omissions described above willfully and with actual knowledge of their illegality and actual purpose to the detriment of plaintiffs and other companies, their respective employees and shareholders.

176. These violations of N.J.S.A. 2C:41-2(c) caused plaintiffs to suffer direct injury to their businesses and property through the billions of dollars in lost revenues, profit, enterprise value, and enterprise value that was caused by the methods and practices of the Enterprise described herein. Plaintiffs, therefore, are entitled to recover from the defendants the amount in which it has been damaged, to be trebled in accordance with N.J.S.A. 2C:41-4(c), together with interest and the costs of this suit, including reasonable attorneys' fees.

## COUNT II

### RACKETEERING (N.J.S.A. § 2C: 41-2(d))
### (AGAINST ALL DEFENDANTS)

177.   Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

178.   Beginning in or about January 2003 and continuing until the present, each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless knowingly agreed to facilitate the scheme described herein to manage, operate, conduct, and participate in the conduct of the affairs of the Enterprise and conspired to do so within the meaning of N.J.S.A. 2C:5-2 through a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-2(d).

179.   Beginning in or about December 2002, each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless, being persons intimately involved in transactions carried on by and the affairs of the Enterprise -- which was engaged in, and the activities of which affected, trade and commerce -- unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate N.J.S.A. 2C:41-2(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity, all in violation of N.J.S.A. 2C:41-2(d).

180.   Part of the conspiracy was that each of the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless personally committed or agreed to commit two or more fraudulent and illegal racketeering acts and conducted and agreed to conduct the affairs of the

Enterprise through the pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) described above.

181.    In furtherance of the conspiracy and to effect the objects thereof, the S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless committed and caused to be committed a series of overt acts, including:

- engaging in blatant manipulation of the market for the publicly-traded securities of Fairfax and other companies;

- commissioning false and misleading reports concerning each of the plaintiffs and other companies;

- manipulating the issuance of such reports to benefit other Enterprise members and harm others to whom members of the Enterprise owed fiduciary and other duties;

- purchasing and/or selling securities in order to profit from the manipulated timing of the issuance of the fraudulent reports;

- charging Enterprise members and others substantial fees to receive the false and misleading information and reports that were created by Enterprise members;

- issuing analyst reports that falsely purported to be "independent" but were, in fact, premeditated attacks on a number of companies, including Fairfax;

- fraudulently misrepresenting that Fairfax shares were overvalued due to, among others things, corporate malfeasance and aggressive accounting by the plaintiffs;

- planting false and misleading information concerning the plaintiffs, and other companies with securities analysts, regulators, rating agencies, customers and investors; and

- rebroadcasting and disseminating that false and misleading information to the media and the public.

182.    These violations of N.J.S.A. 2C:41-2(d) caused plaintiffs to suffer direct injury to their businesses and property through the billions of dollars in lost revenues, profit, and enterprise value that was caused by the methods and practices of the Enterprise described herein. Plaintiffs, therefore, are entitled to recover from the defendants the amount in which it has been

damaged, to be trebled in accordance with N.J.S.A. 2C:41-4(c), together with interest and the costs of this suit, including reasonable attorneys' fees.

## COUNT III

### COMMERCIAL DISPARAGEMENT
### (AGAINST ALL DEFENDANTS)

183. Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

184. As set forth herein, defendants knowingly and intentionally published false and injurious statements about plaintiffs' businesses and property, including plaintiffs' ability to operate their businesses and implement their strategic plan. Defendants' false and malicious statements attacked the plaintiffs' business fundamentals, their accounting, and their current and future products in analyst reports, newspaper articles, direct communications, and internet message board postings that were both false and injurious.

185. Defendants communicated these falsehoods to third-parties and understood and intended that these false statements would have the effect of preventing others from doing business with the plaintiffs and interfering with the plaintiffs' business relationships.

186. As set forth herein, these injurious attacks on plaintiffs' business and reputation included:

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, and Trinity Defendants commissioning of false and misleading reports from the Morgan Keegan Defendants and other Enterprise members, for public dissemination;

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless planting of false and misleading information and collaborating with other Enterprise members to disseminate that information;

- The Morgan Keegan Defendants' issuance of false and misleading reports;

- The S.A.C. defendants' issuance of false and misleading reports;

- The dissemination of these false reports to media outlets by the defendants;
- The defendants' dissemination and republication of those false and misleading reports in a direct attack on plaintiffs' businesses.

187.    Defendants' false statements directly harmed the plaintiffs' businesses in numerous specific ways, including, without limitation:

- Harming the plaintiffs' business reputation, resulting in lower agency ratings and credit ratings.  Such decreasing ratings caused, among other things, plaintiffs to suffer loss of underwriting business, increased costs of capital and financing, and loss of prospective acquisitions and other business opportunities.
- Reducing plaintiffs' enterprise value by billions of dollars by causing existing investors to sell their shares in Fairfax stock, and causing potential new investors to refrain from purchasing Fairfax stock.

188.    Defendants' wrongful disparagement of plaintiffs' businesses and products in these and other respects has caused many hundreds of millions of dollars in harm to plaintiffs.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS (AGAINST ALL DEFENDANTS)

189.    Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

190.    As set forth herein, plaintiffs had contracts and agreements with third-parties, including, but not limited to:  (a) rating agencies; (b) bondholders; (c) employees; and (d) agents, producers, distributors and suppliers of plaintiffs' insurance products.

191.    Each of the defendants knew of plaintiffs' contractual relationships with these third-parties.

192.    Defendants intentionally and maliciously interfered with plaintiffs' contracts with these third-parties by employing wrongful means that included unlawful securities market manipulation, mail and wire fraud and unlawful commercial bribery.  This interference was

committed intentionally and without justification or excuse and was carried out by, among other things:

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, and Trinity Defendants commissioning of false and misleading reports from the Morgan Keegan Defendants and other Enterprise members, for public dissemination;

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless planting of false and misleading information and collaborating with other Enterprise members to disseminate that information;

- The Morgan Keegan Defendants' issuance of false and misleading reports;

- The S.A.C. defendants' issuance of false and misleading reports;

- The dissemination of these false reports to media outlets by the defendants;

- The defendants' dissemination and republication of those false and misleading reports in a direct attack on plaintiffs' businesses.

193. Each of the defendants was aware of, and intended to cause, the detrimental impact on plaintiffs' contractual relations that was caused by the defendants' respective actions.

194. As a direct and proximate cause of defendants' intentional interference with plaintiffs' contractual relationships with third-parties, plaintiffs' contractual relationships were damaged, and plaintiffs' suffered resulting monetary damages in an amount to be determined at trial.

## COUNT V

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST ALL DEFENDANTS)

195. Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

196. Plaintiffs had business relationships and prospective business relationships with many third-parties, including, but not limited to: (a) shareholders and bondholders; (b) actual and potential lenders; (c) other actual and potential marketing and business partners; (d) agents,

producers, and other actual and potential distributors and suppliers of plaintiffs' products; and (e) shareholders and management of various companies under consideration for acquisition by plaintiffs.

197.    Each of the defendants knew of plaintiffs' actual and potential contractual and business relationships with these third-parties.

198.    Defendants intentionally and maliciously interfered with plaintiffs' relationships with these third-parties by employing wrongful means that included unlawful securities market manipulation, mail and wire fraud, and unlawful commercial bribery. This interference was committed intentionally and without justification or excuse and was carried out by, among other things:

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, and Trinity Defendants commissioning of false and misleading reports from the Morgan Keegan Defendants and other Enterprise members, for public dissemination;

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan Defendants and Lawless planting of false and misleading information and collaborating with other Enterprise members to disseminate that information;

- The Morgan Keegan Defendants' issuance of false and misleading reports;

- The S.A.C. defendants' issuance of false and misleading reports;

- The dissemination of these false reports to media outlets by the defendants;

- The defendants' dissemination and republication of those false and misleading reports in a direct attack on plaintiffs' businesses.

199.    Plaintiffs had a reasonable expectation that each of the aforementioned business relationships would result in plaintiffs obtaining the benefits of these business opportunities. However, defendants' wrongful actions directly caused plaintiffs to lose or alter the business relationships described herein, to plaintiffs' economic detriment. Each of the defendants was

81

aware of, and intended to cause, this detrimental impact on plaintiffs' prospective and actual contractual relations.

200.    As a direct and proximate cause of defendants' intentional interference with plaintiffs' actual and prospective contractual relationships with third-parties, plaintiffs' business relationships were damaged, and plaintiffs suffered resulting monetary damages in an amount to be determined at trial.

## COUNT VI

### COMMON LAW CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

201.    Plaintiffs restate each and every allegation of paragraphs 1 through 149 as if fully set forth herein.

202.    As set forth herein, each of the defendants, together with others, conspired with respect to Counts III through V and acted in concert to commit unlawful acts.  Each of the defendants shared the same conspiratorial objective, which was to create and disseminate false and misleading statements and reports concerning the plaintiffs' business, with the goals of harming the plaintiffs' businesses and profiting from that harm through improper and unlawful trading in Fairfax securities.  Each of the defendants understood the objectives of the scheme, accepted them, and was an active and knowing participant in the scheme.

203.    The defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above, including:

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, and Trinity Defendants commissioning of false and misleading reports from the Morgan Keegan Defendants and other Enterprise members, for public dissemination;

- The S.A.C. Defendants, Exis Defendants, Lone Pine Defendants, Rocker Defendants, Third Point Defendants, Trinity Defendants, Morgan Keegan

Defendants and Lawless planting of false and misleading information and collaborating with other Enterprise members to disseminate that information;

- The Morgan Keegan Defendants' issuance of false and misleading reports;
- The S.A.C. defendants' issuance of false and misleading reports;
- The dissemination of these false reports to media outlets by the defendants;
- The defendants' dissemination and republication of those false and misleading reports in a direct attack on plaintiffs' businesses.

204.    As a direct, proximate result of the operation and execution of the conspiracy, plaintiffs have been injured and suffered damages in an amount to be proven at trial.

205.    At all relevant times, the defendants' conduct was willful and done with legal malice and knowledge that it was wrongful.

## DEMAND FOR JURY TRIAL

206.    Demand is hereby made for a trial by jury for all issues so triable.

WHEREFORE, Plaintiffs demand judgment:

(a)     Awarding plaintiffs compensatory damages in amounts to be determined at trial, together with interest, attorneys' fees, costs and disbursements;

(b)     Awarding plaintiffs punitive and exemplary damages in amounts to be determined at trial;

(c)     Awarding plaintiffs treble damages, costs of suit, attorney's fees and costs of litigation under N.J.S.A. 2C:41-4(c), in amounts to be determined at trial;

(d)     Awarding plaintiffs injunctive relief preventing defendants from engaging in continued wrongful activity, as set forth herein, in the form that the Court may determine is just and proper;

(e)     Prejudgment and post-judgment interest; and

(f)     Such other and further relief as is just and proper.

Dated: July 26, 2006

                              Respectfully submitted,

                              NAGEL RICE & MAZIE, LLP

                              By:
                                  Bruce H. Nagel, Esq.
                                  Jay J. Rice, Esq.
                              103 Eisenhower Parkway
                              Roseland, New Jersey  07068

                              and

                              Marc E. Kasowitz, Esq.
                              Daniel R. Benson, Esq.
                              Michael J. Bowe, Esq.
                              KASOWITZ, BENSON, TORRES
                                & FRIEDMAN LLP
                              1633 Broadway
                              New York, New York 10019
                              (212) 506-1700

                              ATTORNEYS FOR PLAINTIFFS

<u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to R. 4:25-4, Plaintiffs designate Bruce H. Nagel, Esq. as trial counsel in this

matter.

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
Bruce H. Nagel, Esq.
Jay J. Rice, Esq.

Dated: July 26, 2006

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable.

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
Bruce H. Nagel, Esq.
Jay J. Rice, Esq.

Dated: July 26, 2006

86

## RULE 4:5-1 CERTIFICATION

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is or may be the subject of other pending judicial proceedings as set forth below. Plaintiffs do not believe that of the parties in the other pending judicial proceedings should be joined in this action.

1.    <u>Fisher, et al. v. Fairfax Financial Holdings LTD., et al.</u>, C.A. No. 1:06-cv-03713 (GBD), U.S. Court for the Southern District of New York. The parties in the action are:

        a)    Glenn M. Fisher
        b)    Carol M. Trivette
        c)    C.I. Funds Group
        d)    Fairfax Financial Holdings LTD.
        e)    V. Prem Watsa
        f)    Trevor Ambridge
        g)    Anthony F. Griffiths
        h)    Robert Hartog
        i)    Bradley P. Martin
        j)    Banc of America Securities, LLC

2.    <u>Parks, et al. v. Fairfax Financial Holdings LTD. et al.</u>, C.A. No. 1:06-cv-02820 (GBD), U.S. Court for the Southern District of New York. The parties in the action are:

        a)    Kenneth Parks
        b)    William Seymour
        c)    C.I. Funds Group
        d)    Fairfax Financial Holdings LTD.
        e)    V. Prem Watsa
        f)    Trevor Ambridge
        g)    M. Jane Williamson
        h)    Anthony F. Griffiths
        i)    Robert Hartog
        j)    Bradley P. Martin
        k)    Banc of America Securities, LLC
        l)    Britton-Notay

3.    <u>Johnson, et al. v. Fairfax Financial Holdings LTD, et al.</u>, 1:06-cv-03463 (RJH), U.S. Court for the Southern District of New York. The parties in the action are:

a) Shane Johnson
b) C.I. Funds Group
c) Fairfax Financial Holdings LTD.
d) V. Prem Watsa
e) Greg Taylor
f) Trevor Ambridge
g) M. Jane Williamson

4. <u>Jaffe, et al. v. Fairfax Financial Holdings LTD. et al.,</u> 1:06-cv-03127 (GBD),
U.S. Court for the Southern District of New York. The parties in the action are:

a) Richard E. Jaffe
b) C.I. Funds Group
c) Fairfax Financial Holdings LTD.
d) V. Prem Watsa
e) Greg Taylor
f) Trevor Ambridge
g) M. Jane Williamson

NAGEL RICE & MAZIE, LLP
Attorneys for Plaintiffs

By: _____
        Bruce H. Nagel, Esq.
        Jay J. Rice, Esq.

Dated: July 26, 2006

88