# EXHIBIT A

1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2                  CIVIL ACTION NO. 06-cv-1625-SRC-CCC

 3   BIOVAIL CORPORATION, BIOVAIL
     PHARMACEUTICALS, INC.,
 4
              Plaintiffs
 5
              vs.
 6
     S.A.C CAPITAL MANAGEMENT, LLC,
 7   et als,

 8            Defendants.
     _____
 9

10                            January 9, 2007
                              Newark, New Jersey
11

12

13

14   B E F O R E:  HONORABLE STANLEY R. CHESLER, USDJ

15

16   Pursuant to Section 753 Title 28 United States Code, the
     following transcript is certified to be an accurate record as
17   taken stenographically in the above-entitled proceedings.

18
     JACQUELINE KASHMER
19   Official Court Reporter

20

21

22                      JACQUELINE KASHMER, C.S.R.
23                        OFFICIAL COURT REPORTER
                             P. O. Box 12
24                        Pittstown, NJ 08867
                            (908) 229-6496
25
```

2

```
 1   A P P E A R A N C E S:

 2

 3        KASOWITZ BENSON TORRES & FRIEDMAN
          1633 Broadway
 4        New York, NY 10019
          BY:  MARC E. KASOWITZ, ESQ.
 5             MICHAEL J. BOWE, ESQ.

 6             and

 7        NAGEL RICE, LLP
          103 Eisenhower Parkway
 8        Roseland, NJ 07068
          BY:  BRUCE H. NAGEL, ESQ.
 9        For the Plaintiffs

10

11
          PAUL WEISS RIFKIND WHARTON & GARRISON, llp
12        1285 Avenue of the Americas
          New York, NY 10019-6064
13        BY:  DANIEL J. KRAMER, ESQ.
               ANDREW GORDON, ESQ.
14
               and
15
          LOWENSTEIN SANDLER, PC
16        65 Livingston Avenue
          Roseland, NJ 07068-1791
17        BY:  DEBORAH A. SILODOR, ESQ.

18
               and
19

20        WILLKIE FARR & GALLAGHER, LLP
          BY:  MARTIN KLOTZ, ESQ.
21        For the Defendant S.A.C. Capital Management, LLC

22

23

24

25
```

1           THE COURT:  All right.  This is Biovail vs. S.A.C.

2    Capital Management.  Can I have appearances by counsel

3    please.

4           MR. KASOWITZ:  Marc Kasowitz, Kasowitz, Benson,

5    Torres & Friedman, for plaintiffs, your Honor.  This is

6    Michael Bowe of Kasowitz, Benson, Torres & Friedman, also for

7    plaintiff and Bruce Nagel, Nagel & Rice, also for plaintiffs,

8    your Honor.

9           MR. KRAMER:  Good morning.  Dan Kramer from Paul

10   Weiss for the S.A.C. defendants.  I have Andrew Gordon from

11   my firm with me this morning, as well as Deborah Silodor from

12   Lowenstein, Sandler and Marty Klotz from Willkie Farr &

13   Gallagher.

14          THE COURT:  Good morning to all of you.  All right.

15   Who's going to be arguing on behalf of plaintiffs?

16          MR. KASOWITZ:  I will, your Honor.

17          THE COURT:  All right, Mr. Kazowitz.  Go ahead.

18          MR. KASOWITZ:  Thank you, your Honor.  I think that

19   from our point of view, the simple fact here is that this

20   Court lacks subject matter jurisdiction over this case.  The

21   case is a state law RICO claim brought by a pharmaceutical

22   company against a group of hedge funds and securities

23   analysts who the complaint alleges have attacked the company

24   and sought to destroy it through a campaign of disinformation

25   and harassment.

4

1          There are no federal causes of action alleged in the

2    complaint and the alleged predicate acts upon which the state

3    RICO claim is based which are -- which include both state law

4    and federal law, predicate acts, don't implicate any statutes

5    that require any special interpretation by a federal court.

6          I don't remember much from law school, your Honor,

7    but one of the things that I do remember some 30 years ago is

8    that subject matter jurisdiction in a case can't be waived

9    and so it doesn't matter, your Honor, whether we're happy to

10   be in this courtroom, we are, whether the defendants are

11   happy to be here, or whether your Honor is happy to have us.

12   If we remain in this courtroom and we take this case all the

13   way through trial, through a verdict and to a final judgment,

14   we'll be taking it all the way to a final judgment that may

15   not be enforceable at the end of the day.

16          THE COURT:  Okay.  Let's cut to the chase.  All

17   right.  Grable is the 800-pound gorilla which hovers over

18   this case and what is its applicability to the facts of this

19   case?  From your point of view, obviously your position is

20   Grable is a wonderful case and it doesn't apply here.  Tell

21   me why.

22          MR. KASOWITZ:  Actually, we think that Gable is a

23   wonderful case, it is a good gorilla for us, your Honor, and

24   we think that it applies very directly in two basic ways.

25          First, if you look at the facts of Grable, what the

1    court said there was that there was one issue and only one

2    issue for resolution and the issue for resolution in that

3    case was federal.  The question of whether or not there would

4    be -- whether or not under the Federal Tax Code a notice to a

5    debtor taxpayer was sufficient be of the seizure of his

6    property at a foreclosure sale.  So, it was only one issue.

7    It dealt with federal law and the court held in that

8    circumstance that in that kind of exceptional circumstance,

9    that would require the intervention of the federal court.

10           Our case is completely different.  We have numerous

11   different issues and numerous issues of state law and

12   numerous issues of state law predicates which govern here.

13   And under the three-prong test in Grable, clearly under the

14   three-prong test in Grable, your Honor, the defendants

15   clearly cannot sustain the heavy burden that they have of

16   demonstrating that there's federal question jurisdiction.

17           The first prong is really the most important prong

18   and that is the question of whether or not the state law

19   claims necessarily raise a federal issue, and the way that

20   the courts have interpreted that prong is, is it possible for

21   the case to be resolved without applying federal law, and

22   it's very clear here, your Honor, that it's not only possible

23   but it is the fact that this case can be resolved without any

24   reference to federal law.

25           The complaint contains numerous allegations of

1     predicate acts of racketeering activity under the New York

2     state -- under the New Jersey RICO statute which have nothing

3     at all to do with federal law.

4             The complaint alleges, for example, that the

5     defendant securities analysts, including Gradient Analytics

6     and including David Maris of Banc of America, were paid to

7     issue false and misleading analysts' reports about Biovail at

8     the behest of the hedge funds, including S.A.C. Capital, and

9     that misconduct and those allegations clearly constitute

10    violations of numerous provisions of New Jersey law which are

11    incorporated as predicate acts in the RICO statute Chapter

12    41-1.

13            Chapter 41-1A provides that racketeering activity

14    includes in Subsection O, fraudulent practices and all crimes

15    defined in Chapter 21 of Title 2C.  Chapter 21 of Title 2C

16    includes the crimes of commercial bribery and deceptive

17    business practices.  But the conduct of the defendants that

18    we've alleged here, your Honor, clearly qualifies as

19    fraudulent practices, clearly qualifies as deceptive business

20    practices, and clearly qualifies as commercial bribery.

21            Now, there's another predicate act here that's

22    important and that's the predicate act in Chapter 41-1

23    Subsection P, and that's fraud in the offering, sale or

24    purchase of securities.  And the complaint clearly alleges

25    that the hedge fund defendants, again including S.A.C.

1   Capital, engaged in the trading of securities in connection

2   with the issuance of these fraudulent analysts' reports which

3   I've described.

4          So, even if the Court were to ignore entirely all of

5   the federal predicate acts that are included within the

6   complaint, each of the state law RICO causes of action is

7   more than amply supported by the state law predicates in the

8   area of racketeering that we've alleged.

9          So, in that circumstance, your Honor, under Grable

10  the remand motion for that reason alone should be granted

11  because the defendants just cannot sustain their burden of

12  demonstrating that a resolution of federal issues is

13  necessary to these claims.  And even if they could sustain

14  that burden, your Honor, even if they could show, which they

15  can't, that there's somehow -- the federal court's attention

16  here is necessary for the resolution of their claims, they

17  also fail the second prong of the Grable test.

18         The second prong of the Grable test is that it asks

19  whether the federal question that is raised is actually

20  disputed and substantial, and what that means, your Honor, is

21  that you need something more than just a straightforward

22  application of federal law.  The cases are very, very clear,

23  including the recent cases in this court, that in order to be

24  substantial, what is required is an interpretation of a

25  provision of federal law that is ambiguous and unsettled.

8

1          Now, that's definitely not the case here, your

2    Honor.  The fact is that the federal predicate acts that

3    we've alleged in the complaint are garden variety, wire, mail

4    fraud and securities fraud claims, and there's absolutely

5    nothing ambiguous or unsettled about them.

6          For mail fraud you need two things.  You need a

7    fraud, you need a mailing.  For wire fraud you need two

8    things.  You need a fraud, you need a use of the wires.  And

9    for securities fraud you need fraud in connection with a

10   purchase or sale of a security.

11         Now, there's no question but that all of these

12   predicate acts are easily satisfied under well-settled law.

13   There's nothing complicated, there's nothing ambiguous,

14   there's nothing esoteric that needs to be decided here that

15   would require the intervention of the federal court.

16         THE COURT:  They've argued that there are all sorts

17   of unsettled issues like, for example, whether or not loss

18   causation standards required under federal securities law

19   have been met, whether or not you have standing under the

20   RICO statute to pursue the claims.

21         MR. KASOWITZ:  Your Honor, I think, I really think

22   that those are red herrings.  I think the way it works is as

23   follows:  They have argued that when looking at the wire and

24   mail fraud statutes and the securities statutes, whether or

25   not all of the issues that are at play in the federal courts

1   as to whether or not you need materiality reliance and the

2   like are going to be issues here, but the fact of the matter,

3   your Honor, is that those are issues under the federal RICO

4   statute that's being litigated in the federal courts and in

5   the federal courts you don't permit securities predicate acts

6   to be appended as predicate acts by the PSLRA.  Okay.

7          Here, we're in or should be in state court and the

8   question of whether or not materiality, loss causation or any

9   of those issues is going to be engrafted upon the wire and

10  mail fraud statutes is going to be a question for the state

11  court in interpreting the state RICO statute.  That's very,

12  very clear.

13         And in fact, your Honor, were we in the situation

14  where we were in front of your Honor in this case and the

15  question came up as to whether or not you would engraft the

16  materiality or a loss causation requirement onto the federal

17  RICO predicate here, what your Honor would say, we submit, is

18  this is not for me to decide under federal law.  I've got to

19  determine what the Supreme Court of New Jersey would say

20  about this issue because it's an issue of state law under the

21  New Jersey RICO statute.

22         THE COURT:  And their argument would be that New

23  Jersey has already said that we follow the federal RICO

24  statute and, therefore, I'd be interpretering the federal

25  RICO statute.

```
 1              MR. KASOWITZ:  But the fact of the matter is, your
 2    Honor, that New Jersey doesn't follow the federal RICO
 3    statute, clearly doesn't.  The basis for that is in the
 4    specifications of predicate acts under 41-1, and when you
 5    look at those specifications, the reference to the federal
 6    RICO statute is very clear.  It just says in the definitional
 7    sections conduct for predicate acts will be defined, will be
 8    defined, including conduct that may be at issue in the
 9    federal RICO statutes.  So, it's not saying that it
10    follows -- there's no law that it follows to the tee and, in
11    fact, the legislatures are very, very clear here, and this
12    really implicates the third prong of the case, of Grable.
13    The legislatures are very, very clear.
14              What the federal -- what Congress has said is that
15    you're not going -- under the PSLRA, is that you're not
16    permitted to have securities acts as predicate acts for the
17    federal RICO statute, very, very clear.  What the New Jersey
18    legislature has said is that you can have securities acts as
19    predicate acts for the New Jersey state RICO statute.  So,
20    there's a very clear division.
21              Following the logic of the defendants here, what
22    they seek to do is to reverse that in effect.  According to
23    their argument, according to their argument, in effect,
24    according to their argument, every single time that a
25    plaintiff alleged a securities act as a predicate act in a
```

1   state RICO case, they would claim that there would be a right

2   and an entitlement to remove that case to federal court where

3   under the PSLRA the case would be dismissed.  So, in effect,

4   what they're seeking to do is the work that Congress, the

5   federal Congress has already done or they're seeking to undo

6   it, because Congress, in adopting the PSLRA and in

7   prohibiting securities acts as being predicate acts under the

8   federal RICO statute, could have said that we will preempt

9   state law, we will not permit the New Jersey legislature to

10  adopt a statutory framework that permits a securities

11  violation to be a predicate act.  But it didn't.

12          According to their thinking, every time a securities

13  violation, a securities crime is a predicate act in a state

14  RICO case, that will be a basis for removal to the federal

15  court where the case will be dismissed.  So, what we find

16  ourselves here, your Honor, is a situation where under this

17  logic Biovail might have no recovery and no possibility for

18  recovery whatsoever if this case were removed.

19          THE COURT:  Well, of course, your argument would be

20  that I've got all sorts of other state predicates which don't

21  implicate that particular issue under any circumstances.

22          MR. KASOWITZ:  Absolutely true, your Honor.  And

23  that's the reason -- that was my first point, and that's the

24  reason that the first prong of Grable cannot be satisfied by

25  the defendants here.

1           THE COURT:  I'm just curious, I know you'd love to

2     be here but you'd also love to be in state court.  You could

3     have made this removal-proof by not pleading any federal

4     statutes at all as predicates.  Correct?

5           MR. KASOWITZ:  I suppose -- first of all, I would

6     love to be here, your Honor.  I have been in front of your

7     Honor in the past and I'd like to be back here, but I'm

8     afraid that I can't because there's no subject matter

9     jurisdiction here.

10          I suppose you're right, your Honor, we could have

11    not pled any of the federal predicate acts that we did plead

12    in the complaint, but the fact of the matter is, your Honor,

13    we weren't being cute when we pled that complaint.  This is a

14    well-pleaded complaint and we pled all of the violations of

15    the applicable laws that we found and that were present and,

16    in fact, we were permitted to do that under the state RICO

17    statute which expressly says that you can do that, federal or

18    state, but having pled all of those, having pled all of those

19    predicate acts, by no means is that a basis for the removal

20    of this case -- well, by no means is that a basis for federal

21    question jurisdiction here and if you look at virtually every

22    single case in the country, including cases in this court

23    which have addressed that issue, which have addressed the

24    issue of a state law RICO claims with predicate acts that are

25    either federal or state, every single case has granted a

1   motion to remand, every single one.  The only one that didn't

2   was the Ayres case in the 11th Circuit.

3               THE COURT:  I was just about to ask you about Ayres.

4               MR. KASOWITZ:  I really would like to be here, your

5   Honor.  And in Ayres the court, the 11th Circuit itself was

6   very, very clear to say that it was a very, very limited

7   situation, and cases construing Ayres have all taken the

8   position that it was a very, very limited situation.

9               THE COURT:  Do you think the court was essentially

10  saying there, well, it's close but since we've already gone

11  through dispositive motion practice on this and decided the

12  merits of all the issues, let's stretch a point and keep

13  jurisdiction.

14              MR. KASOWITZ:  Well, I'm not sure if they were or

15  not, your Honor, but it was kind of an odd situation because

16  the predicate acts that were pled were federal mail and wire

17  fraud predicate acts.  But to resolve the question as to

18  whether or not the elements of those crimes could be

19  satisfied, what the court said it needed to do was to look at

20  this, I think it's a national -- the Federal Motor Vehicle

21  and Safety Act, and to determine whether or not the

22  defendants in that case, the defendant was General Motors,

23  and it needed to make a determination as to whether General

24  Motors had an affirmative obligation to make disclosures

25  about product defects in its cars.  I think the defects were

1    with Delco parts or something like that, and if it found that

2    General Motors had that affirmative obligation to make that

3    disclosure, then all of the mailings in the marketing

4    literature and the like that General Motors had sent out

5    about the safety of its cars potentially could be -- could

6    have been violative of the wire and mail fraud statutes.  So,

7    it's a complicated situation.  It's not nearly what we have

8    here.  And there have been courts that have looked precisely

9    at that set of facts.

10            There's the Bridgestone case which came three years

11   later.  I think that Ayres was in 2000, Bridgestone was in

12   2002 or 2003.  It was a federal district court in Indiana and

13   they were dealing with exactly the same kind of situation,

14   the same act, but the result that Bridgestone came to was

15   exactly the opposite.  They granted the motion -- the federal

16   court there granted the motion to remand and the reason that

17   it granted the motion to remand was it said we don't need to

18   get to this issue of federal mail or wire fraud predicate

19   acts.  All we need to do is to look at other state predicate

20   acts like a manslaughter predicate act and the like and it's

21   not necessary for us to look to federal law.

22            And that situation is exactly the situation we have

23   or very close to the situation we have in this very case

24   where we have state law predicate acts which the court can

25   look to.  It doesn't need to resolve the issue by reference

15

1    to federal law, so, therefore, the defendants can't sustain

2    their burden to show why they should remain in federal court

3    and it should be remanded.

4         THE COURT:  Okay.  Tell me about SLUSA.  Their

5    argument, as I understand it, is that for practical purposes

6    your corporation should be treated as if it was a class

7    because you are trying -- I guess the argument is you're

8    trying to get all the damages that a class would get because

9    you want the entire market capitalization that was lost.  So,

10   it's a functional equivalent of representing a class of

11   shareholders in Biovail.

12        MR. KASOWITZ:  I will say this as politely as I can.

13   They're wrong at every single count.  First of all, we are

14   not -- the case that we brought is not a class action.  It is

15   brought on behalf of the two plaintiff corporations for their

16   own benefit seeking damages for themselves and the damages --

17   this is the key point, I think the argument that the

18   defendants are making really is this.  They're saying we've

19   read your complaint and from our reading of your complaint,

20   we are going to contend that you are looking not only for

21   damage to the company but you are looking to recover loss for

22   the decline in the value of the shares, and because you're

23   looking to recover for the loss in the decline of the value

24   of the shares as a result of this conspiracy, that's the only

25   kind of -- the only entity that can seek to recover that loss

1   are shareholders.  So, you must in effect be representing the

2   interests or trying to represent the interests of the

3   shareholders and those shareholders are going to comprise a

4   class and, so, therefore, you're bringing this on behalf of a

5   class and SLUSA says that you've got to be in federal court.

6          Well, all those things are wrong.  First of all,

7   what we are looking to recover is damage to the corporation

8   from this illegal conspiracy, and there's been substantial

9   damage to the corporation from this conspiracy.  The

10  conspiracy goes back, the allegations in the complaint go

11  back to the spring, summer of 2003, and what was happening at

12  that time was Biovail was seeking to transform itself from

13  being a manufacturer, sort of a boutique manufacturer of

14  pharmaceuticals to becoming a vertically integrated full

15  service manufacturer.  They were going to develop the

16  pharmaceuticals, they were going to manufacture the

17  pharmaceuticals, they were going to market them and they were

18  going to distribute them.

19         And so, in the roll-out of this thing, one of the

20  key elements of it was they were going to join up with a

21  joint venture partner, a large distribution company here in

22  New Jersey, and they were going to become a fully integrated

23  manufacturer.

24         Well, the attack by the defendants began just at or

25  about that time and this attack which consisted of a massive

1   disinformation campaign aimed at the business press, aimed at

2   the -- from the analysts and the like, and also the

3   instigation of improper federal and state regulatory probes,

4   had a disastrous effect on the company.

5          One of the things that happened was the joint

6   venture partner pulled out.  The other thing that happened

7   was the doctors who were going to prescribe Biovail's

8   medications and the like, they pulled out.  And the third

9   thing that happened among others was that the banks pulled

10  out.  So, the financing that was going to be critically

11  important for the roll-out of this new venture and the new

12  venture was going to be critically important to the future

13  and success of the company was destroyed and there are

14  massive damages that resulted from that.  All of the damages

15  that were incurred by the company in that roll-out and what

16  the company would have been had that roll-out been permitted

17  to have survived and to have prospered, all are damages that

18  the company has.

19         So, the third piece really is this, your Honor.

20  Under SLUSA itself, you only need to look at the terms of

21  SLUSA itself to see that we are not a class action because

22  SLUSA says that it defines a corporation as one person.  It

23  doesn't define a corporation in any way, that's what we are,

24  as a representative body or seeking to represent the

25  interests of the shareholders and the like.  I think your

1    Honor that that's a make-weight argument.  I don't think that

2    it has any merit whatsoever.

3              THE COURT:  Thank you.  Let me hear from Mr. Kramer.

4              MR. KRAMER:  Yes, your Honor.

5              THE COURT:  Okay.  We've got the Grable three-part

6    test.  Tell me how you meet it.

7              MR. KASOWITZ:  Absolutely, your Honor.  Let's focus

8    on Grable.  Grable is the relevant binding Supreme Court

9    decision and what Grable says at page 2368 is that the

10   relevant question is, quote, does a state law claim

11   necessarily raise a stated federal issue actually disputed

12   and substantial --

13             THE COURT:  Keep going.

14             MR. KRAMER:  -- which a federal forum may entertain

15   without disturbing any congressionally approved balance of

16   federal and state judicial responsibilities.  And I think the

17   confusion here is they have confused the issue of whether

18   their complaint necessarily raises a substantial federal

19   issue with whether it raises a necessarily dispositive issue.

20   Those are two different concepts and what Grable said is it

21   must necessarily raise it.

22             And plaintiffs are the masters of their complaint.

23   They decided to inject federal predicates into their claim

24   and because they injected those federal predicates, your

25   Honor, this Court or any court that deals with this case will

1   necessarily have to deal with the federal issues.

2        Now, we can talk in a minute why we believe those

3   federal issues are substantial but there's no getting away

4   from the fact that their complaint necessarily raises the

5   issues because they've injected the federal predicates.  It's

6   not that you have to look behind the complaint for a lurking

7   federal issue.  They actually put it in the complaint by

8   alleging violations of federal mail fraud, wire fraud and

9   securities fraud as predicate acts.

10       And by the way, your Honor, we don't know today

11  whether some of those federal issues will be dispositive or

12  not.  I don't think dispositiveness is the test.  It's not

13  the language of Grable which says necessarily raised.

14       But who knows after motion practice, on motion to

15  dismiss or summary judgment, it may be that the only issues

16  in this case are federal ones and if this case were to go to

17  a jury, we don't know whether the jury would focus only on

18  the federal issues.  So, they may turn out to be dispositive

19  here, but that's not the test, that's not the language of

20  Grable, and plaintiffs could have avoided this situation on

21  1441.  They had the ability -- they don't have to raise every

22  claim they think they possibly have.  They have the ability

23  to restrict their claims and try to avoid federal court but

24  they injected the federal claims and there's a consequence to

25  that.  And one of the consequences is it, therefore,

1   satisfies the Grable standard of necessarily raising the

2   federal issues.

3          THE COURT:  Let me ask you a question.

4          MR. KRAMER:  Okay.

5          THE COURT:  In making that argument which

6   essentially is that the inclusion of federal predicates

7   necessarily raises at least a federal question regardless of

8   whether or not substantial or not --

9          MR. KRAMER:  Correct.

10         THE COURT:  -- are you suggesting to me that Grable

11  has rejected the language in Christianson vs. Colt Industries

12  which suggests that where there are federal issues but there

13  are also independent state claims or issues which could be a

14  basis for granting the state cause of action, that the claim

15  does not arise under federal law?

16         MR. KRAMER:  Well, I think that Christianson, of

17  course, is not a removal case.  It's not a case under 1441

18  and it's not a RICO case and, so, while Christianson has some

19  interesting language in it, that involved whether a claim

20  arose under patent law for the purpose of determining whether

21  an appeal belonged in the Federal Circuit or in the Seventh

22  Circuit, so, I would say that Christianson, while

23  interesting, is not directly on point because it doesn't

24  construe 1441.  It construes similar language in another

25  statute which might be of interest to us but it is not

 1    directly on point here, your Honor.  And I think that Grable
 2    is the Supreme Court's most recent enunciation of the test,
 3    and when you look at Grable, when you look at Grable, the
 4    issue that the Supreme Court took cert on in Grable, the
 5    issue that the Supreme Court thought was significant enough
 6    to decide was the question of whether Merrell Dow was being
 7    correctly read by a variety of courts, including Horowitz in
 8    this district, to require that the federal issues be issues
 9    that the plaintiffs could have pursued in federal court,
10    where they had -- they could have pursued a cause of action.
11    And many cases were knocked out of federal court on the
12    grounds that if the plaintiff couldn't pursue the claim,
13    didn't have a private right of action, it didn't belong in
14    federal court.

15          What Grable holds is that's an incorrect
16    interpretation of federal law and, in fact, even if the
17    plaintiff could not have filed the suit in federal court in
18    the first place and could not have pursued the claim in their
19    own right, you still can have removal if the federal issue is
20    significant enough.  And I think that's important, your
21    Honor, when we look at Grable because I think what Grable is
22    saying is if it raises a federal issue, if it necessarily
23    raises a federal issue, we're going to determine whether it's
24    significant and if it is significant, there is arising under
25    jurisdiction in federal court and to the extent that has any

1  tension with Christianson which I think is not on point, I do

2  think that Grable is the Supreme Court's most recent

3  enunciation of their view of arising under jurisdiction under

4  1441, and so it should be filed.

5         THE COURT:  The Fifth Circuit has adopted the

6  Christianson analysis at least in a removal situation in the

7  Howery vs. Allstate case.

8         MR. KRAMER:  Yes, your Honor.  Not in a RICO case,

9  not in a RICO case.  But there are two courts which have done

10  it, but in those cases, your Honor, I would note a couple of

11  things.

12         First of all, Howery is a 2001 case, Grable is a

13  2006 case, so, again, it's before the Supreme Court said we

14  don't really care, you know, what we're really focusing on is

15  the way I read Grable, what we're really focusing on is, is

16  there a significant issue.  There's no Third Circuit court

17  that has ever followed this notion, and what Howery says at

18  page 917 is what they were looking for was a pragmatic

19  assessment of the nature of the federal interest at stake.

20  And one way to read Howery, I believe, is that the court

21  decided that the federal interests there involved a case

22  where the plaintiff's house burned down and the plaintiff

23  tried to get insurance and the insurer said no, no, no, we

24  think, you know, this is an issue of arson and, therefore,

25  we're not going to honor your claim.

1            The plaintiff sued and the defendant said, well,

2    there's an issue of whether proper notices were given under

3    this policy, it's kind of a federal issue, let's move it to

4    federal court.  And Howery said this case doesn't belong in

5    federal court, the federal right isn't strong enough,

6    insurance historically is an issue left to the states.

7            The case we have here with Biovail is dramatically,

8    dramatically different.  It's post Grable.  It involves an

9    allegation, the principal allegation by plaintiffs that the

10   defendants manipulated the market for Biovail stock through

11   an alleged disinformation campaign and profited through short

12   selling.

13           Your Honor, these issues of market regulation and

14   short selling are quintessentially federal issues.  They're

15   wholly regulated by the federal government.  It's not like

16   the insurance industry that is a state regulated claim.

17   These are issues that have been the subject of Congressional

18   acts over the past ten years from the PSLRA all the way

19   through SLUSA.  It's been the subject of numerous Supreme

20   Court decisions from Central Bank all the way through Dura

21   and Dabit.  The issues that we've identified for your Honor,

22   the courts themselves say these are significant issues.

23           THE COURT:  Okay.  Let's take a look at those.  All

24   right.  So we're going now to substantial federal question

25   issues.

1           MR. KRAMER:  That's fine.

2           THE COURT:  Let's take a look at the substantial

3   federal issues which you've asserted.

4           MR. KASOWITZ:  Your Honor, you'll agree with me

5   based on plaintiff's presentation there's certainly dispute.

6   That much we can agree upon.  So, I think the issue is only

7   whether they're substantial, and I can walk through them.

8           The first one is whether this decline in market cap

9   that is one of the allegations of damage in this case is

10  really a proxy for shareholder loss.  And your Honor, if I

11  can just grab the complaint for a second, I know that the

12  plaintiffs wish they hadn't alleged this in their complaint

13  but to paraphrase I guess a former secretary of defense, you

14  go to federal court with the complaint you have, not the

15  complaint you wish you had.  And in this complaint, your

16  Honor, at least twice at paragraph 173, they seek damages for

17  lost market capitalization and, again, in paragraph eight at

18  179, they seek damages for lost market cap, and that's not a

19  proxy for anything.

20          The market capitalization of a company is the stock

21  price times the number of shares.  It is exactly what

22  shareholders seek, lost market cap, when they bring a

23  shareholder class action.

24          THE COURT:  Let's forget the SLUSA issue for the

25  time being and let's deal with whether or not that presents a

1   substantial issue, an essential and substantial contested

2   federal issue.  Okay.

3          MR. KRAMER:  We'll put SLUSA aside for a minute and

4   I'll get to the non-SLUSA issues then.

5          THE COURT:  Let's get to the non-SLUSA issues.

6          MR. KRAMER:  This complaint does not allege that

7   Biovail relied on the misrepresentations or was a buyer and

8   seller of the stock or that the disclosure of the alleged

9   fraud led to a decline in their stock price, all elements of

10  a 10(b) federal security claim.

11         They have raised as a predicate act to their RICO

12  claim federal securities law and now their argument to the

13  Court is, yes, we raise it as a predicate act but, no, we're

14  not going to have to prove it and, no, the court is not going

15  to have to address it, and your Honor, I don't think that's

16  right.  There's no case they've cited, there's no case

17  they've cited, we cited several cases, there's no case they

18  cited where courts said you can plead in state court a

19  federal predicate but you don't have to prove the elements of

20  that predicate.

21         The one case that they cite, an SEC case, the court

22  holds the SEC, in order to get recovery, need not prove

23  reliance.  That's a special rule for the SEC.  That's not a

24  rule for plaintiffs with federal predicates in state court.

25         THE COURT:  Let me ask you a question.  Why is that

1    a federal question as opposed to a state law question and, in

2    particular, okay, the plaintiffs in this case are not seeking

3    a direct recovery under federal securities law.  Therefore,

4    for example, the Supreme Court's recent announcements on loss

5    causation issues which of course are extremely relevant to

6    potential recovery by a securities class seeking a recovery

7    directly under Rule 10(b)(5) may not be in the least bit

8    relevant to whether or not there has been a violation of the

9    rule as a predicate.  In short, a criminal violation of

10   10(b)(5) in effect without implicating whether or not the

11   standards for federal recovery of damages under 10(b)(5) have

12   been met, why can't that be the case here?

13            MR. KRAMER:  Your Honor, I think I follow your

14   question and if not, I'll ask for a clarification.  I think

15   the reason --

16            THE COURT:  I'll tell you what.  Let me make it

17   clearer.  All right.  We'll move off of 10(b)(5) perhaps to a

18   clearer issue.

19            MR. KRAMER:  All right.

20            THE COURT:  Mail fraud.

21            MR. KRAMER:  Okay.

22            THE COURT:  Okay.  The criminal provisions of the

23   federal mail and wire fraud statutes require simply that a

24   defendant have engaged in an artifice or scheme -- artifice,

25   device or scheme to defraud and utilize the mails in

```
 1    furtherance of that scheme.  Correct?

 2             MR. KRAMER:  Your Honor.

 3             THE COURT:  That's the gist of the statute.

 4             MR. KRAMER:  Yes.  Your Honor, Anza, a recent

 5    Supreme Court case, states that there's an open and

 6    significant question of whether reliance is an element.

 7    That's what Anza in the Supreme Court states.  I believe

 8    that's an open significant federal issue regarding the mail

 9    and wire fraud statutes.

10             THE COURT:  Okay.  Now, there has been a decision

11    which says that -- when you say reliance, reliance for what

12    purpose?

13             MR. KRAMER:  Well, there's no reliance alleged here

14    at all.

15             THE COURT:  Okay.

16             MR. KRAMER:  So for the purpose of this complaint,

17    it's simply not pled, it's simply not there, and we could

18    argue whether it's required or not and I concede, your Honor,

19    Anza leaves the question open.  Anza says we're not going to

20    address this issue because we can resolve the case on other

21    bases, but Anza does say that it's a significant and open

22    issue whether reliance has to be pled, and there's no

23    reliance of any sort pled anywhere in this very lengthy

24    complaint.

25             THE COURT:  Refresh my recollection, though.
```

 1              MR. KRAMER:  Okay.

 2              THE COURT:  Anza is a Supreme Court case dealing

 3    with the use of mail fraud predicates for a federal RICO

 4    claim.

 5              MR. KRAMER:  That's correct, your Honor.

 6              THE COURT:  Okay.  Now, therefore, even the effect

 7    of Anza is at this point an issue for the Supreme Court's

 8    evaluation of the sufficiency of pleading and proofs for

 9    federal RICO claims.  Correct?

10              MR. KRAMER:  I don't believe that's correct and I'll

11    tell you why.

12              THE COURT:  Why?

13              MR. KRAMER:  And I'll tell you why I don't believe

14    that's correct.  I believe that when you plead a federal

15    violation as a predicate act in a state RICO case, you're

16    obligated to, if you're going to prevail on that part of your

17    case, to plead and prove the elements of the predicate you've

18    alleged.  And so, here having alleged -- now, there are other

19    ways they vsn plead their claim, there's no question about

20    that.  But if they're going to plead their claim through the

21    wire fraud predicate, the federal wire fraud predicate which

22    they've alleged, we're going to have a fight, we're going to

23    have a disagreement, and we're going to have a disagreement

24    over whether one of the elements they have to plead and prove

25    to establish that predicate on the way to establishing the

1    RICO claim is reliance.

2           THE COURT:  Let me ask you this, though.

3           MR. KRAMER:  Okay.

4           THE COURT:  Anza is a decision of the Supreme Court

5    in the context of a RICO claim predicated upon mail fraud.

6           MR. KRAMER:  Correct.

7           THE COURT:  Question, did it purport to be leaving

8    as an open issue whether or not a criminal prosecution for

9    mail fraud requires detrimental reliance?

10           MR. KRAMER:  Your Honor, I don't know the answer to

11   that.

12           THE COURT:  Okay.  The reason I ask you that is, I

13   mean, to the best of my recollection, I don't recall

14   detrimental reliance being an element of criminal RICO

15   prosecutions.  It requires, at least my recollection is in

16   the context of criminal prosecutions, a demonstration that

17   there was a scheme or artifice to defraud.  Among other

18   things, for example, success or failure has never been a

19   component of criminal prosecutions under criminal RICO

20   statutes.  Okay.  And if you failed, for example, then one

21   would presume that there's no detrimental reliance if your

22   scheme or artifice to defraud were a failure.

23           What I'm suggesting to you is that a state's

24   incorporation of a federal standard of conduct into a state

25   statute may very well incorporate issues as to the state