# EXHIBIT C

Gregory B. Reilly
Deborah A. Silodor
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500
greilly@lowenstein.com

Daniel J. Kramer
Lewis R. Clayton
Theodore V. Wells, Jr.
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
212.373.3000

Andrew T. Berry
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
973.622.4444
aberry@mccarter.com

Martin Klotz
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
212.728.8000

*Attorneys for Defendants S.A.C. Capital Management, LLC, S.A.C. Capital Advisors, LLC,
S.A.C. Capital Associates, LLC, Sigma Capital Management, LLC, S.A.C. Healthco Fund, LLC
and Steven A. Cohen.*

DOCUMENT FILED ELECTRONICALLY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BIOVAIL CORPORATION and BIOVAIL PHARMACEUTICALS, INC., | **Hearing Date: July 24, 2006** |
| Plaintiffs, | **Oral Argument Requested** |
| - against - | |
| | No. 06 Civ. 1625 (HAA)(SDW) |

S.A.C. CAPITAL MANAGEMENT, LLC,
S.A.C CAPITAL ADVISORS, LLC, S.A.C.
CAPITAL ASSOCIATES, LLC, S.A.C.
HEALTHCO FUNDS, LLC, SIGMA CAPITAL
MANAGEMENT, LLC, STEVEN A. COHEN,
ARTHUR COHEN, JOSEPH HEALEY,
TIMOTHY MCCARTHY, DAVID MARIS,
GRADIENT ANALYTICS, INC.,
CAMELBACK RESEARCH ALLIANCE, INC.,
JAMES CARR BETTIS, DONN VICKREY,
PINNACLE INVESTMENT ADVISORS, LLC,
HELIOS EQUITY FUND, LLC, HALLMARK
FUNDS, GERSON LEHRMAN GROUP,
GERSON LEHRMAN GROUP BROKERAGES
SERVICES, LLC, THOMAS LEHRMAN,
PATRICK DUFF, JAMES LYLE, AND
DOES 1 THROUGH 50

                                    Defendants.

**THE S.A.C. DEFENDANTS'
MEMORANDUM OF LAW
IN OPPOSITION TO
<u>MOTION TO REMAND</u>**

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................... ii

Background ............................................................................................................... 3

    A.    Procedural History ...................................................................... 3

    B.    Biovail's Complaint ..................................................................... 4

Argument ................................................................................................................. 5

I.     BIOVAIL'S ACTION SHOULD NOT BE REMANDED TO STATE COURT .. 5

    A.    Removal Is Proper Where, As Here, A State-Law Cause Of
           Action Raises A Substantial And Disputed Issue
           Of Federal Law ...................................................................... 5

    B.    Biovail's Complaint Raises Substantial And Contested
           Issues of Federal Law ............................................................ 8

    C.    Removal Will Forward the Congressionally Mandated
           Balance Of Judicial Responsibilities ....................................... 15

    D.    Biovail's Arguments Against Removal Should Be Rejected .................. 17

II.    BIOVAIL'S COMPLAINT IS REMOVABLE UNDER SLUSA ...................... 23

    A.    Congress Intended SLUSA To Create Uniform National Standards For
           Securities Fraud Actions .......................................................... 24

    B.    Biovail's Demand To Recover Lost Market Capitalization Satisfies
           SLUSA'S "Covered Class Action" Requirement ...................................... 26

III.  BIOVAIL'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED ........ 30

Conclusion ................................................................................................................ 30

**TABLE OF AUTHORITIES**

### CASES

Page(s)

*Anza* v. *Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006)................................ 10-11, 13-14

*Ayres* v. *General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) .......................................19

*BT Sec. Corp.* v. *W.R. Huff Asset Mgmt. Co., L.L.C.*,
    891 So. 2d 310 (Ala. 2004)........................................................................27

*Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988) .............................................. 12-13

*Bald Eagle Area Sch. Dist.* v. *Keystone Fin., Inc.*, 189 F.3d 321
    (ed Cir. 1999) .........................................................................................14

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723 (1975).........................................9

*Bourke* v. *Carnahan*, No. C2-03-144,
    2003 U.S. Dist. LEXIS 13399 (S.D. Ohio July 1, 2003).......................................18

*Bowdoin Constr. Corp.* v. *Rhode Island Hosp. Trust Nat'l Bank, N.A.*,
    869 F. Supp. 1004 (D. Mass. 1994)...................................................................15

*Brennan* v. *Southwest Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998).....................................7

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    203 F. Supp. 2d 1032 (S.D. Ind. 2002)..............................................................18

*Cape Ann Investors LLC* v. *Lepone*, 296 F. Supp. 2d 4 (D. Mass. 2003) .........................27

*Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)...................................................................................15

*Christianson* v. *Colt Indus.*, 486 U.S. 800 (1988) .............................................................22

*Copece* v. *Depository Trust & Clearing Corp.*, No. 05-80498-CIV-RYSKAMP, 2005
    WL 4050118 (S.D. Fla. Oct. 11, 2005) ...............................................................7

*D'Alessio* v. *New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001) ................... 7, 16-17

*D.E. & J. Ltd. P'ship* v. *Conaway*, Nos. 03-2334, 03-2417,
    2005 WL 1386448 (6th Cir. June 10, 2005).......................................................11

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) .......................................................11

                                                                                              **Page(s)**

*Dep't of Econ. Dev't* v. *Arthur Andersen & Co. (U.S.A.),*
    924 F. Supp. 449 (S.D.N.Y. 1996) ...................................................................15

*Dudek* v. *Prudential Sec., Inc.,* 295 F.3d 875 (8th Cir. 2002) ...........................................29

*Dura Pharmaceuticals, Inc.* v. *Broudo,* 544 U.S. 336 (2005)..................................... 11-12

*Ergobilt, Inc.* v. *Neutral Posture Ergonomics, Inc.,*
    No. CA 3-97-CV-2548-R, 1998 WL 483624 (N.D. Tex. Aug. 10, 1998)..............9

*Felton* v. *Morgan Stanley Dean Witter & Co.,* 2006 WL 1149184
    (S.D.N.Y. May 2, 2006) ...................................................................................29

*Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983) ....................15

*Frayler* v. *New York Stock Exch.,* 118 F. Supp. 2d 448 (S.D.N.Y. 2000)................... 16-17

*Friedlander* v. *Troutman, Sanders, Lockerman & Ashmore,*
    788 F.2d 1500 (11th Cir. 1986) .........................................................................16

*Frigitemp Corp.* v. *Financial Dynamics Fund, Inc.,* 524 F.2d 275 (2d Cir. 1975)............9

*Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.,* No. 99 CIV 342,
    1999 WL 544708 (S.D.N.Y. July 27, 1999)..........................................................9

*Golub* v. *Hilb, Rogal & Hobbs Co.,* 379 F. Supp. 2d 639 (D. Del. 2005).........................27

*Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfr'g,*
    125 S. Ct. 2363 (2005)....................................................................... 5, 6, 15, 17-22

*Graham Commercial Realty, Inc.* v. *Shamsi,*
    75 F. Supp. 2d 1371 (N.D. Ga. 1998)..................................................................18

*Gully* v. *First Nat'l Bank,* 299 U.S. 109 (1936) ...........................................................6, 18

*Hawkins* v. *Nat'l Ass'n of Sec. Dealers, Inc.,* 149 F.3d 330 (5th Cir. 1998).......................7

*Hemispherx Biopharma, Inc.* v. *Asensio,* No. Civ. A. 98-5204, 1999 WL 144109 (E.D.
    Pa. Mar. 15, 1999) ...........................................................................................12

*Hevesi* v. *Citigroup Inc.,* 366 F.3d 70 (2d Cir. 2004)................................................. 12-13

*Holmes* v. *Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992) .........................................10, 14

*Horowitz* v. *Marlton Oncology, P.C.,* 116 F. Supp. 2d 551 (D.N.J. 1999) ......................18

*Howery* v. *Allstate Ins. Co.,* 243 F.3d 912 (5th Cir. 2001)...............................................22

*Interchange State Bank* v. *Veglia,* 668 A.2d 465 (N.J. App. Div. 1995) ..........................10

Page(s)

*Joffee* v. *Lehman Bros., Inc.*, 410 F. Supp. 2d 187 (S.D.N.Y. 2006) ...............................11

*Knight-McConnell* v. *Cummins*, No. 03 Civ. 5035(NRB),
    2004 WL 1713824 (S.D.N.Y. July 29, 2004)........................................................9

*Lander* v. *Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001) ......................25

*Matter of Liquidation of Integrity Ins. Co.*,
    584 A.2d 286-87 (N.J. Law Div. 1990)..............................................................10

*Local 1 FLM-FJC* v. *Caputo*, No. 86 Civ. 3839,
    1988 U.S. Dist. LEXIS 1253 (S.D.N.Y. Feb. 17, 1988)........................................19

*Log On America, Inc.* v. *Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 445-46 (S.D.N.Y. 2001)............................................................9

*Martin* v. *Franklin Capital Corp.*, 126 S. Ct. 704 (2005) .................................................30

*Meinders* v. *Refco Sec., Inc.*, 865 F. Supp. 721 (D. Colo. 1994)......................................18

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*,
    126 S. Ct. 1503 (2006)...............................................................................16, 23

*Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58 (1987) ..................................................6

*Milan Express Co.* v. *Western Sur. Co.*, 886 F.2d 783 (6th Cir. 1989)............................19

*Miles* v. *Merrill Lynch & Co.*, No. 04-8026 (2d Cir. June 30, 2005) ................................13

*Myers* v. *Merrill Lynch & Co.*, No. C-98-3532-WHO,
    1999 WL 696082 (N.D. Cal. Aug. 23, 1999) ........................................................17

*Nat'l Credit Reporting Ass'n* v. *Experian Info. Solutions*, No.
    C04-01661 WHA, 2004 WL 1888769 (N.D. Cal. July 21, 2004)...........................7

*Ormet Corp.* v. *Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996).................................... 19-20

*Patterman* v. *Travelers, Inc.*, 11 F. Supp. 2d 1382 (S.D. Ga. 1997) .................................18

*Rains* v. *Criterion Sys., Inc.*, 80 F.3d 339 (9th Cir. 1996)................................................22

*Rivet* v. *Regions Bank of Louisiana*, 522 U.S. 470 (1998) .............................................29

*Rowinski* v. *Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005)................ 23-25, 29

*Sheridan* v. *New Vista, L.L.C.*, 406 F. Supp. 2d 789 (W.D. Mich. 2005) .........................21

*Sparta Surgical Corp.* v. *Nat'l Ass'n of Sec. Dealers Inc.*,
    159 F.3d 1209 (9th Cir. 1998) .......................................................................7, 16

Page(s)

*State* v. *Ball*, 632 A.2d 1222 (N.J. App. Div. 1993).............................................................8

*Stechler* v. *Sidley Austin Brown & Wood, LLP*, C.A. 05-3486, 2006 WL 90916 (D.N.J. Jan. 13, 2006)................................................................ 18, 20-21

*Suffolk* v. *Long Island Lighting Co.*, 549 F. Supp. 1250 (E.D.N.Y. 1982).......................20

*In re TECO Energy, Inc. Sec. Litig.*, No. 8:04-CV-1948-T-27EAJ, 2006 WL 845161 (M.D. Fla. Mar. 30, 2006) ......................................................................................11

*U.S. Express Lines, Ltd.* v. *Higgins*, 281 F.3d 383 (3d Cir. 2002) .......................................5

*W.R. Huff Asset Mgmt. Co., LLC* v. *Kohlberg Kravis Roberts & Co.*, 234 F. Supp. 2d 1218 (N.D. Ala. 2002)...................................................................27

*West 14th St. Commercial Corp.* v. *5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir. 1987) .......................................................................... 19-20

*West* v. *Prudential Sec., Inc.*, 282 F.3d 935 (7th Cir. 2002).............................................13

*Wietschner* v. *Gilmartin*, No. 02 Civ. 4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003).............................................17

*In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004)............................27

*Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.DN.Y. 2004) ...............................................................29

## STATUTES & LEGISLATIVE HISTORY

15 U.S.C. § 77r .......................................................................................................24

15 U.S.C. § 78j ......................................................................................................4, 8

15 U.S.C. § 78aa....................................................................................................16

15 U.S.C. § 78bb..............................................................................................3, 23, 24

18 U.S.C. § 1341...................................................................................................4, 8

18 U.S.C. § 1343...................................................................................................4, 8

18 U.S.C. § 1961...............................................................................................4, 8, 14

18 U.S.C. § 1964(c)................................................................................................14

28 U.S.C. § 1331..................................................................................................6, 20

28 U.S.C. § 1441......................................................................................................5

**Page(s)**

28 U.S.C. § 1447(c) ....................................................................................30

Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109
    Stat. 737 (1995) ...............................................................................14

17 C.F.R. § 240.10b-5 ...........................................................................4, 8

H.R. Conf. Rep. No. 105-803 (1998) ...........................................................25

S. Rep. No. 105-182 ...............................................................................26

N.J.S.A. 2C: 41-2.................................................................................4-5, 8

### Preliminary Statement

Biovail's remand motion shoud be denied because its complaint raises signicant and disputed issues of federal law and because it is subject to the removal provisions of the Securities Litigation Uniform Standards Act of 1998.

In this lawsuit, Biovail Corporation, a Canadian pharmaceutical company, charges that Defendants engaged in a "stock market manipulation scheme" with a wide array of research analysts, hedge fund managers and journalists. Biovail claims Defendants (and other unnamed "conspirators") disseminated false information about Biovail's business, which caused Biovail's stock price to decline, and allowed Defendants to profit from short-selling Biovail's stock.[1] Biovail's stock price fell from the mid–$40 range in June 2003, when the "scheme" allegedly began, to the mid–$20 range, and Biovail seeks to recover the entire stock price decline—over $4 billion—as damages.

If this case proceeds past motion practice, Defendants will show that the concerns raised about Biovail were well-founded. Biovail's Complaint glides over the fact that in 2003 Biovail repeatedly missed its earnings forecasts, and its revised forecasts, by wide margins; the United States Attorney for Massachusetts started an investigation into a Biovail clinical experience study; both the Securities and Exchange Commission ("SEC") and the Ontario Securities Commission ("OSC") opened investigations into Biovail's accounting policies and

---

[1]   A short-seller of stock effectively borrows stock from a lender, sells the stock, and hopes to profit if the stock price falls before the date that the short-seller must return the stock to the lender. (Cmplt. ¶ 40.) As is explained in a recent article in the *New York Times*, short-selling is beneficial to securities markets because it sends signals that a company's shares may be overvalued, which can hasten the correction in the stock's price to more appropriate levels. (Joe Nocera, *Selling Short the Virtues of Short Sellers*, N.Y. Times, Apr. 1, 2006, at C1 ("Nocera Article"), Declaration of Deborah A. Silodor ("Silodor Decl."), Exh. A.) For example, short sellers are widely credited with contributing to the exposure of fraud at Enron. (*Id.*)

into trading by Biovail's Chairman and CEO, Eugene Melnyk;[2] Melnyk was selling millions of

shares of Biovail's stock, while the company was falsely denying the existence of the OSC

regulatory investigation; and all of the major research firms covering Biovail (Goldman Sachs,

Merrill Lynch, Morgan Stanley and CIBC) had identified significant issues with Biovail's

business and financial reporting practices and were downgrading their ratings on Biovail. In

short, Biovail's stock did drop in 2003, but the stock drop was a reaction to the Company's

disappointing performance and regulatory problems, not the result of a conspiracy spreading

falsehoods. Through this lawsuit Biovail seeks to silence its detractors, and shift the spotlight

away from its own business failures, by blaming a far flung conspiracy of short sellers, research

analysts and reporters for the Company's many problems.

       For the purposes of this motion, however, it is sufficient to show that Biovail's

stock market manipulation claim belongs in federal court. As we explain in this memorandum,

removal of the Biovail action to this Court was proper on two separate grounds. *First,* this case

is properly within this Court's jurisdiction because Plaintiffs invoke three federal statutes—mail

fraud, wire fraud, and securities fraud—as predicate offenses for their RICO claim, and in so

doing, raise substantial and disputed issues of federal law. Those issues include a corporation's

standing to recover damages for lost market capitalization, and questions of loss causation and

reliance under the federal RICO and securities laws. (*See* Part I.B.) Biovail incorrectly argues

that a state RICO claim asserting federal statutory violations as predicate offenses may never

give rise to federal question jurisdiction. While some state RICO actions asserting federal

predicates have been remanded because the federal issues involved were not substantial or

---

[2]   *See* Leonard Zehr, *Biovail's Melnyk Targeted by OSC*, Toronto Globe & Mail, Nov. 12, 2005, at B5, Silodor Decl. Exh. B.

disputed, other such actions have remained in federal court where, as here, the federal predicates raised substantial and contested issues of federal law. (*See* Part I.)

*Second*, Biovail's claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1), and are removable to this Court under SLUSA's removal provision, 15 U.S.C. § 78bb(f)(2). In SLUSA, Congress stated its intention that plaintiffs should not be able to bring mass actions for securities fraud violations under state law or in state court. SLUSA preempts every "covered class action" based on state law and alleging a misrepresentation or omission of material fact or any manipulative or deceptive device "in connection with the purchase or sale of" nationally traded securities. 15 U.S.C. § 78bb(f)(1)(A). The Biovail Complaint meets this standard because it alleges Defendants engaged in manipulative conduct in connection with short sales of Biovail's stock. It satisfies the "covered class action" requirement, as that term includes not only traditional Rule 23 class actions, but actions where, as here, plaintiff seeks to recover damages, such as lost market capitalization, which are properly recovered, if at all, by shareholders themselves in a representative action. (*See* Part II.)

## Background

### A.   Procedural History

There are two lawsuits pending in this Court, both of which allege that Defendants manipulated Biovail's stock price, and both of which seek as damages the drop in Biovail's stock price from the purported manipulation. In the first lawsuit, Biovail filed an action on February 22, 2006, in the New Jersey Superior Court, Law Division, Essex County.

3

On April 5, 2006, Defendants removed that action to this Court[3] and, on May 5, 2006, Biovail moved to remand the case to state court.

In the second lawsuit, Biovail shareholders filed an action on March 24, 2006, in this Court, captioned *Giudice* v. *S.A.C. Capital Management, LLC, et al.*, 06-CV-1413-HAA-MF (the "*Giudice* action"). (*See* Complaint in *Giudice* v. *S.A.C. Capital Management, LLC, et al.*, ("*Giudice* Complaint"), Silodor Decl. Exh. C.) The *Giudice* action is based on the same allegations set out in Biovail's lawsuit,[4] and is asserted against almost all of the same defendants, but is brought on behalf of a class of Biovail's shareholders, rather than Biovail itself, and asserts a claim for violation of the federal securities laws.

### B.   Biovail's Complaint

The Complaint contains six counts. Count I asserts a violation of N.J.S.A. 2C: 41-2(c), the New Jersey RICO statute, which prohibits persons from participating "directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." The New Jersey RICO statute, like its federal counterpart, requires proof of predicate offenses, N.J.S.A. 2C:41-1, and Biovail asserts as predicates several New Jersey statutory violations and three federal violations:  mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and securities fraud (15 U.S.C. §§ 78j and 78ff and 17 C.F.R. § 240.10b-5) (Cmplt. ¶¶ 151, 162, 165, 168). Biovail also asserts that Defendants' conduct amounted to "'racketeering activity' within

---

[3]   The removal is pursuant to 28 U.S.C. §§ 1331 & 1441, 18 U.S.C. § 1341, 1343, 1961 *et seq.*, 15 U.S.C. § 78j, 78bb(f)2), 78aa, 78ff, and 17 C.F.R. § 240.10b-5. (Notice of Removal ¶ 33.) Biovail does not challenge any procedural aspect of the removal. (Mem. of Law in Support of Plaintiffs' Motion to Remand ("Pl. Mem.") 1-4.)

[4]   The *Giudice* plaintiffs assert that allegations in their complaint are made "on information and belief and based upon the facts set forth in the publicly filed complaint in Biovail Corp. v. S.A.C. Capital Mgmt. LLC et al., Docket No. ESX L-001583 06 (Superior Court of New Jersey, Essex County) (Bernstein, J.)." (*See Giudice* Complaint, pmbl., Silodor Decl. Exh. C.)

the meaning of 18 U.S.C. § 1961(1)(B)," the federal RICO statute. (Cmplt. ¶ 165.) Count II asserts a violation of N.J.S.A. 2C: 41-2(d) and alleges a conspiracy to violate the New Jersey RICO statute. The remaining four counts are common-law claims for commercial disparagement, tortious interference with contractual relationships, tortious interference with prospective economic advantage, and common-law civil conspiracy.

   With respect to damages, Biovail alleges that "[t]he increased costs and expenses, lost profits, and diminished enterprise value that the Enterprise's scheme directly and proximately caused by the defendants' wrongful conduct is no less than $4.6 billion." (Cmplt. ¶ 145.) The vast majority of this damage claim consists of Biovail's stock price decline, as Biovail alleges that Defendants' acts reduced "plaintiffs' market capitalization by over $4 billion." (Cmplt. ¶ 184; *see also* ¶¶ 173, 179 (alleging injury for lost "market capitalization").) These are the same damages Biovail's shareholders seek in the *Giudice* action. (*See Giudice* Complaint ¶ 15, Silodor Decl. Exh. C.)

**Argument**

**I.**

**BIOVAIL'S ACTION SHOULD NOT BE REMANDED TO STATE COURT**

A.   **Removal Is Proper Where, As Here, A State-Law Cause Of Action Raises A Substantial And Disputed Issue Of Federal Law**

   A civil action brought in state court may be removed to the federal District Court in the District where such action is pending as long as the District Court would have had original jurisdiction over the matter. 28 U.S.C. § 1441; *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfr'g*, 125 S. Ct. 2363, 2366 (2005); *U.S. Express Lines, Ltd.* v. *Higgins*, 281 F.3d 383, 389 (3d Cir. 2002). District courts have original jurisdiction over matters where the parties are diverse, or where the case falls within the district court's federal question jurisdiction, *i.e.,* if it

5

"aris[es] under the Constitution, treaties or laws of the United States." *U.S. Express Lines*, 281 F.3d at 389 (quoting 28 U.S.C. § 1441(b))).

In determining whether a case arises under federal law, courts look to the plaintiff's "well-pleaded complaint." *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63 (1987). However, the complaint need not expressly assert a federal cause of action in order to "arise under" federal law for removal purposes. As the Supreme Court noted last term in *Grable*, the Court has "recognized for nearly 100 years that in certain cases federal jurisdiction will lie over state-law claims that implicate significant federal issues," explaining that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 125 S. Ct. at 2367. Thus, in determining whether to exercise federal question jurisdiction over a state action, courts must apply a "'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Id.* (quoting *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 117-18 (1936) (Cardozo, J.)).

Biovail misstates the standard for removal when it argues that "if [a] party elects to assert no federal causes of action, there is no federal-question jurisdiction." (Pl. Mem. at 8.) Instead, as the Supreme Court explained in *Grable*, a state-law claim is properly removed to federal court if two conditions are met. First, the claim must present a "substantial" and "contested federal issue." 125 S. Ct. at 2367 (citations omitted). Second, federal jurisdiction must be "consistent with federal judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.*

6

Thus, courts repeatedly have held that removal is proper where, as here, plaintiff's "state-law claim [is] predicated upon federal law." *Nat'l Credit Reporting Ass'n, Inc.* v. *Experian Info. Solutions, Inc.*, No. C04-01661 WHA, 2004 WL 1888769, at *4 (N.D. Cal. July 21, 2004).[5] For example, in *Experian,* plaintiff brought a claim under California's unfair competition law, alleging that "defendants' wrongful conduct . . . violated state *and federal antitrust laws*." 2004 WL 1888769, at *3 (emphasis in original). Observing that the California law "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable," *id.* at *3, the court held that removal was proper because, "[f]or a finding of 'unlawful' business practices under Section 17200, there must first be resolution of . . . the Sherman Act," *id.* at *4. The court rejected plaintiff's argument that remand was barred because it could prove its state-law claim solely by reference to state law, noting that plaintiff "specifically referenced violation of federal antitrust law for its claim." *Id.* at *5. The court concluded: "Plaintiff has made a Sherman Act bed and must now lie in it." *Id.*

---

[5]   *See also D'Alessio* v. *New York Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001) (removal proper where plaintiff's state-law claim required the court "to construe both the federal law governing securities trading on a national exchange and the NYSE's role, as defined under federal law, in enforcing and monitoring a member's compliance with those laws"); *Sparta Surgical Corp.* v. *Nat'l Ass'n of Sec. Dealers Inc.*, 159 F.3d 1209, 1212-13 (9th Cir. 1998) (affirming denial of remand motion where state law claims were predicated on NASD regulations issued pursuant to federal securities law); *Hawkins* v. *Nat'l Ass'n of Sec. Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) (affirming denial of remand where state-law claims sought to enforce federal liabilities and duties); *Brennan* v. *Southwest Airlines Co.*, 134 F.3d 1405, 1412 (9th Cir. 1998) (denying remand where state-law claim seeking refund of tax was governed by federal law); *Copece* v. *Depository Trust & Clearing Corp.*, No. 05-80498-CIV-RYSKAMP, 2005 WL 4050118, at *8 (S.D. Fla. Oct. 11, 2005) (denying remand where claim for negligent monitoring of process for settling securities transactions "[was] dependent upon the scope and requirement of federal law").

**B.    Biovail's Complaint Raises Substantial And Contested Issues Of Federal Law**

Biovail's lawsuit also warrants federal jurisdiction. As Biovail tells us in the very

first paragraph of its Complaint, this case involves a "stock market manipulation scheme."

(Cmplt. ¶ 1; *see also* ¶¶ 15, 145.) Similarly, Biovail's lead attorney, who signed both the

complaint and the motion to remand, recently stated that Biovail's case "is really a very simple

case of market manipulation."[6] The Complaint contends that Defendants "engaged in

'racketeering activity' within the meaning of 18 U.S.C. § 1961(1)(B) (Complt. ¶¶ 165) [the

federal RICO statute] and N.J.S.A. 2C:41-1(a)(2) and 2C:41-1(d) ([the state RICO statute])" by,

among other things, violating the federal securities laws, Section 10(b) of the Securities

Exchange Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. § 78j and 78ff; 17 C.F.R.

§ 240.10b-5, (¶¶ 151, 165), and the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343

(¶¶ 151, 155-61).[7] This pleading raises a host of significant issues of federal law, including the

following:

*First*, there will be a significant issue as to whether Biovail may recover damages

for the decline in its share price, which constitutes $4 billion of the damages Biovail seeks in this

action. Recovery for damage caused by a drop in stock price is generally sought by the

shareholders of the company, and not the company itself, because a diminution in share price is

---

[6]    Imogen Rose-Smith, *Trouble in the House of Cohen*, DailyII.com, May 24, 2006, *available at* http://www.dailyii.com/print.asp?ArticleID=1040565 (printed June 19, 2006), Silodor Decl. Exh. D.

[7]    Counts I and II of the Complaint purport to allege violations of New Jersey RICO, N.J.S.A. 2C:41-2(c). (Cmplt. ¶¶ 146-79.) To state a RICO claim, a plaintiff must allege "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity" through two or more predicate acts. *State* v. *Ball*, 632 A.2d 1222, 1236 (N.J. App. Div. 1993), *aff'd*, 661 A.2d 251 (N.J. 1995).

direct damage to the shareholders, not the company. As the court explained in *Ergobilt, Inc.* v. *Neutral Posture Ergonomics, Inc.*, No. CA 3-97-CV-2548-R, 1998 WL 483624, at *3 n.6 (N.D. Tex. Aug. 10, 1998): "A corporation, after all, does not technically own stock in itself. Consequently, a drop in a corporation's share value would not directly injure the corporation itself. Rather, it would injure those who own stock in that corporation." *See also Frigitemp Corp.* v. *Financial Dynamics Fund, Inc.*, 524 F.2d 275, 281 n.6 (2d Cir. 1975) (holding that issuer "has no actionable claim under the 1934 Act" and stating that "a rise or fall in the market price of the corporate shares does not make the corporation richer or poorer"). Indeed, Biovail acknowledges as much in its remand motion, noting it cannot recover market capitalization damages for itself because Biovail is not a purchaser or seller of its own stock. (Pl. Mem. at 18; *see also Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 731 (1975) (only purchasers or sellers of securities may assert a federal securities fraud claim); *Log On America, Inc.* v. *Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 445-46 (S.D.N.Y. 2001) (where issuer alleged defendants "manipulate[d] downward the market price of [the issuer's] common stock" in order to profit from short selling, issuer lacked standing to assert that claim); *Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC), 1999 WL 544708, at *9 (S.D.N.Y. July 27, 1999) (same); *Knight-McConnell* v. *Cummins*, No. 03 Civ. 5035(NRB), 2004 WL 1713824, at *2 (S.D.N.Y. July 29, 2004). Although the Court need not reach the issue at this juncture, it is clear that if this case proceeds, a significant issue will be whether, under the federal securities laws, Biovail has standing to seek recovery for a decline in the price of Biovail's shares.

A similar standing issue arises under RICO law. Federal law is relevant to Plaintiffs' RICO claims both because Biovail has alleged that Defendants' conduct violates the federal RICO statute (Cmplt. ¶¶ 151, 165), and because New Jersey follows federal RICO

standing principles in interpreting the state's RICO statute.[8] As the Supreme Court held in a case decided on June 5, 2006, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza* v. *Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1998 (2006); *see also Holmes* v. *Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (requiring a "direct relation between the injury asserted and the injurious conduct alleged"). The Court explained in *Holmes* that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's act [is] generally said to stand at too remote a distance to recover," because, among other reasons, "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." 503 U.S. at 268-70.

In this case, the link is too remote between the stock market manipulation Biovail charges and the principal harm it alleges, which is the decrease in the price of its shareholders' stock. Biovail's shareholders were directly injured by the drop in stock price, not Biovail. And those shareholders have sought redress for that stock drop, both in the Southern District of New York, where they have sued Biovail and its officers and directors (*see* Consolidated Amended Class Action Complaint in *In re Biovail Corp. Sec. Litig.*, Master File No. 03-CV-8917 (RO) (S.D.N.Y.), Silodor Decl. Exh. E), and in this Court, where they have sued most of the persons and entities who are defendants in this lawsuit (*see Giudice* Complaint, Silodor Decl. Exh. C).

---

[8]   New Jersey follows federal RICO standing principles in interpreting its own RICO statute. *See Interchange State Bank* v. *Veglia*, 668 A.2d 465, 472 (N.J. App. Div. 1995) (holding that "parallel federal case law is an appropriate reference source to interpret the [state] RICO statute" and following the *Holmes* v. *Securities Investor Protection Corp.*, 503 U.S. 258, 265 (1992) standing test), *cert. denied*, 676 A.2d 1092 (N.J. 1996); *see also Matter of Liquidation of Integrity Ins. Co.*, 584 A.2d 286-87 (N.J. Law Div. 1990) ("[I]n the absence of state law or decisions, federal case law may be used to interpret New Jersey's RICO statute.").

Also, Eugene Melnyk, Biovail's CEO, has asserted a counterclaim against a securities analyst in which he seeks to recover for declines in Biovail's stock price based on allegedly untrue, and damaging, statements the analyst made about Biovail. (*See* Amended Answer in *Treppel* v. *Biovail Corp.*, No. 03 Civ. 3002 (PKL) (S.D.N.Y.), Silodor Decl. Exh. F.) Under recent Supreme Court precedent, the risk of duplicative recoveries by Biovail, its CEO, and its shareholders for the same drop in Biovail's stock price, renders Biovail's RICO claim defective. *Anza*, 126 S. Ct. at 1998 ("The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims.").

*Second*, Biovail's Complaint raises significant legal issues concerning "loss causation," which is an essential element of its predicate claim of a violation of the federal securities laws. The Supreme Court addressed the issue of loss causation in its last term, in *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336 (2005), where it held that plaintiffs must plead and prove that disclosure of the alleged fraud caused their injury. 544 U.S. at 342. In light of *Dura*, federal courts have dismissed actions where plaintiffs fail to plead this causal nexus.[9]

Biovail's Complaint does not satisfy *Dura*'s loss causation rule. The gravamen of Biovail's lawsuit is its allegation that Defendants conspired to issue false reports about Biovail,

---

[9]   *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1026-27 (9th Cir. 2005) (stock drop that occurred before disclosure of issuer's true financial health cannot be considered causally related to defendant's alleged fraud); *D.E. & J. Ltd. P'ship* v. *Conaway*, Nos. 03-2334, 03-2417, 2005 WL 1386448, at *5 (6th Cir. June 10, 2005) (affirming dismissal where plaintiff alleged defendants' conduct directly and proximately caused its losses, but did not "connect the alleged fraud with the ultimate disclosure and loss"); *In re TECO Energy, Inc. Sec. Litig.*, No. 8:04-CV-1948-T-27EAJ, 2006 WL 845161, at *2 (M.D. Fla. Mar. 30, 2006) ("If a drop in stock price occurs before a defendant's fraud is revealed or the truth becomes known, the damages associated with the drop in stock price necessarily cannot be connected to the alleged fraud."); *Joffee* v. *Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 194 (S.D.N.Y. 2006) (no loss causation where the market had access both to analysts' opinions and facts about the company).

which artificially depressed the price of Biovail stock. Biovail, however, does not, and cannot,

allege that its stock price declined in the days, or even weeks, following issuance of the June 20,

2003 report that is the principal focus of Biovail's claims. (*See* Cmplt. ¶¶ 82-87.) Biovail also

does not allege that disclosure of the alleged conspiracy caused its stock price to increase.

Instead, Biovail's stock continues to trade in the low $20 range (Summary for BIOVAIL CORP,

Yahoo! Finance, *at* http://finance.yahoo.com/q?s=bvf (printed June 20, 2006, Silodor Decl. Exh.

G), which is at or below the price it traded during the time of the alleged conspiracy to depress

the price of the stock. This inability to allege that Biovail's stock declined in direct response to

Defendants' allegedly wrongful conduct, or rebounded in response to revelation of the alleged

fraud, renders Plaintiffs' claims defective under the loss causation rules set out in *Dura*, as the

Complaint fails to allege a causal link between the alleged fraud and Plaintiffs' losses. It

presents yet another significant issue of federal law.

   *Third*, Plaintiffs have not properly alleged the reliance element of their securities

fraud claim. In the Complaint, Plaintiffs never contend that they, or any of their shareholders,

actually and justifiably relied on the allegedly false analyst reports in deciding whether to

purchase or sell Biovail's stock. Plaintiffs also do not invoke the "fraud on the market" doctrine,

which the Supreme Court recognized in *Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988), and

"creates a rebuttable presumption that (1) misrepresentations by an *issuer* affect the price of

securities traded in the open market, and (2) investors rely on the market price of securities as an

accurate measure of their intrinsic value." *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 77 (2d Cir.

2004) (citing *Basic*, 485 U.S. at 245-47) (emphasis added).[10]

---

[10]  In *Hemispherx Biopharma, Inc.* v. *Asensio*, No. Civ. A. 98-5204, 1999 WL 144109 (E.D. Pa.
Mar. 15, 1999), the plaintiff, a pharmaceuticals company, alleged a RICO conspiracy
involving the issuance of false, negative analyst reports to depress the company's stock price

A significant legal issue exists regarding whether Plaintiffs will be able to cure this defect. As the Second Circuit recently observed, "[a]lthough the fraud-on-the-market doctrine clearly applies to statements made by *issuers*, as in *Basic*, we have never addressed whether it also applies to reports by *analysts*." *Hevesi*, 366 F.3d at 77 (emphasis in original). The Second Circuit has described this as a "novel legal question," which is "of fundamental importance to the development of the law of class actions," noting that the issue "can have a significant effect on the law of class actions because the presumption of reliance created by the doctrine is often essential to class certification in securities suits." *Id.*; *see also* Order in *Miles* v. *Merrill Lynch & Co.*, No. 04-8026 (2d Cir. June 30, 2005) (granting petition for interlocutory review and directing parties to brief "[w]hether the presumption of reliance established in *Basic, Inc.* v. *Levinson*, 485 U.S. 224, was properly extended to plaintiffs' claims against the non-issuer defendants and to the market manipulation claims") (Silodor Decl. Exh. H); *West* v. *Prudential Sec., Inc.*, 282 F.3d 935, 940 (7th Cir. 2002) (declining to apply the *Basic* presumption to a stockbroker's statements to his customers); John C. Coffee, Jr., *Securities Analyst Litigation*, N.Y.L.J. Sept. 20, 2001, at 5 ("Only in a case where the publication of the [analyst] report clearly moved the market in a measurable fashion would the 'fraud on the market' doctrine seem fairly applicable.") (Silodor Decl. Exh. I).

A similar issue arises with respect to the federal mail and wire fraud violations Biovail charges as predicates for its RICO claim, which also require, but are missing, allegations of reliance. Two weeks ago, in the *Anza* case, the Supreme Court noted that petitioners had argued that plaintiff "may not assert a RICO claim predicated on mail fraud or wire fraud unless

---

so that defendants could profit from short-selling the stock. The court found that the company could not allege the reliance element of its claim, writing, "Plaintiff did not mistakenly think that the market reflected the true worth of its stock and act in reliance on that belief." 1999 WL 144109, at *10.

[plaintiff] demonstrates it relied on the defendant's misrepresentations." 126 S. Ct. at 1998. The Court did not have "occasion to address the *substantial* question whether a showing of reliance is required" because it found that the plaintiff in *Anza* "ha[d] not satisfied the proximate-cause requirement articulated in *Holmes*." *Id.* (emphasis added). That "substantial question" of federal law will be an issue in this case.

*Fourth*, Biovail's charge that Defendants' conduct violated the federal RICO statute is barred by the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995).[11] The PSLRA amended the federal RICO statute so that conduct that constitutes securities fraud may no longer serve as a predicate for a federal RICO violation. Accordingly, the federal RICO statute now provides that "no person may rely upon any conduct that may have been actionable as fraud in the purchase or sale of securities to establish a violation of" the federal RICO statute. 18 U.S.C. § 1964(c). This prohibition is quite broad. As the Third Circuit made clear in *Bald Eagle Area School District.* v. *Keystone Financial, Inc.*, "[t]he 'focus' of the Amendment was on 'completely eliminating the so-called "treble damage blunderbuss of RICO" in securities fraud cases.'" 189 F.3d 321, 327-28 (3d Cir. 1999) (quoting 141 Cong. Rec. H2771). Accordingly, "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Id.* at 330. In this case, Biovail's Complaint, which seeks redress for an alleged "stock market manipulation scheme," charges RICO in a securities fraud case and, as such, runs afoul of the PSLRA.

---

[11]   As we note above, Biovail asserts that Defendants' alleged violations of the federal securities laws and federal mail and wire fraud statutes constitute "'racketeering activity' within the meaning of 18 U.S.C. § 1961(1)(B)," which is the federal RICO statute. (Cmplt. ¶ 165; *see also* ¶ 168.)

14

Similarly, Biovail's attempt to charge aiding and abetting a violation of the securities laws as a predicate RICO act is improper. (*See* Cmplt. ¶ 151(c).)  In *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), the Supreme Court held that "there is no private aiding and abetting liability under § 10(b)." 511 U.S. at 191.  Based upon *Central Bank*, courts hold that there cannot be liability under civil RICO where the defendant is alleged merely to have aided and abetted in a violation of Section 10(b).[12] Accordingly, Biovail's attempt to allege aiding and abetting securities fraud as a predicate for its RICO claim also must fail.

*          *          *

In short, Plaintiffs have pleaded their state law RICO claim in a way that will require resolution of a host of significant and disputed issues of federal law.  As such, this action presents the paradigmatic case "justify[ing] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 125 S. Ct. at 2367.

### C.   Removal Will Forward the Congressionally Mandated Balance Of Judicial Responsibilities

Removal of this action to federal court also is "consistent with the congressional judgment about the sound division of labor between state and federal court," *Grable*, 125 S. Ct. at 2367 (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 (1983)),

---

[12] *See, e.g., Bowdoin Constr. Corp.* v. *Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 869 F. Supp. 1004, 1009 (D. Mass. 1994) ("This Court agrees that any allegations of aiding and abetting securities fraud cannot constitute predicate acts under RICO.  To hold otherwise would enable plaintiffs to use RICO to circumvent the interpreted intent of the Securities Act—a result this circuit does not encourage."); *Dep't of Econ. Dev't* v. *Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 476 (S.D.N.Y. 1996) ("It would be particularly troublesome to infer aiding and abetting liability in a case such as the present one, where most of the predicate acts upon which the RICO claims are based are acts of securities fraud.  Plaintiffs could circumvent *Central Bank* by pleading that a defendant aided and abetted a pattern of Rule 10b-5 violations.").

because the federal interest in addressing the legal issues presented in Biovail's Complaint is overwhelming. Many of the legal issues noted above involve interpretation of the Securities Exchange Act, which is wholly a matter of federal law, as Congress has provided for *exclusive* federal jurisdiction to resolve claims of violations under that Act. 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."). This intense federal interest in securities law issues was recently reiterated by the Supreme Court in *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*, 126 S. Ct. 1503, 1509 (2006), where the Court stated: "The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated."[13]

It should not be surprising then that where plaintiffs have asserted state-law claims that require an interpretation of the federal securities laws, courts have denied motions for remand where the federal question raised is deemed to be a substantial one. *See, e.g., D'Alessio* v. *New York Stock Exch., Inc.*, 258 F.3d 93, 101 (2d Cir. 2001) (removal of tort claims against securities exchange proper where "the gravamen of D'Alessio's state law claims is that the NYSE and its officers conspired to violate the federal securities laws and various rules promulgated by the NYSE and failed to perform its statutory duty, created under federal law, to enforce its members' compliance with those laws"); *Sparta* v. *Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212-13 (9th Cir. 1998) (state-law claims properly removed where they arose out

---

[13] *See also Friedlander* v. *Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500, 1504 (11th Cir. 1986) ("The comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest."); *Frayler* v. *New York Stock Exch.*, 118 F. Supp. 2d 448, 451 (S.D.N.Y. 2000) (actions involving the securities markets are a matter of "intense federal concern").

of exchange's delisting of stock allegedly in violation of federal securities laws); *Wietschner* v.

*Gilmartin*, No. 02 Civ. 4879, 2003 U.S. Dist. LEXIS 18997, at *7 (D.N.J. Jan. 14, 2003)

(removal was proper where allegations supporting plaintiff's state-law claims of breach of

fiduciary duty "are primarily based on defendant-directors' failure to adequately monitor

Merck's financial disclosures in accordance with federal securities laws and regulations");

*Frayler* v. *New York Stock Exch. Inc.*, 118 F. Supp. 2d 448, 451 (S.D.N.Y. 2000) (tort claim

alleging that defendants conspired to purposefully misconstrue Securities Exchange Act was

properly removed); *Myers* v. *Merrill Lynch & Co.*, No. C-98-3532-WHO, 1999 WL 696082, at

*5 n.7 (N.D. Cal. Aug. 23, 1999) (removal of unfair competition claim proper because "the

propriety of defendants' practice with respect to flipping turns exclusively on an interpretation of

federal securities laws and regulations").

      Biovail's Complaint, which raises numerous issues of federal law, many of which

have been the subject of recent Supreme Court decisions, and many of which have been

described by courts as "significant" and "novel," clearly satisfies this standard.  The strong

federal interest in interpreting the federal securities laws would be greatly furthered by upholding

removal of this case.

### D.    Biovail's Arguments Against Removal Should Be Rejected

      Biovail seeks remand, broadly arguing that "federal predicate acts alleged in

support of a state RICO claim do not transform that state claim into a federal claim, confer

federal jurisdiction, or provide any basis for removal." (Pl. Mem. at 12-14.)  There is, however,

no exemption from removal for state RICO cases.  As the Supreme Court confirmed in *Grable*,

remand motions require courts to determine whether the federal issues presented in the case are

substantial.  Courts must apply a "'common-sense accommodation of judgment to [the]

kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the

substantial causes out of the web and lays the other ones aside.'" *Grable*, 125 S. Ct. at 2367

(quoting *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 117-18 (1936) (Cardozo, J.)).  Significantly,

the Supreme Court emphasized that it had not kept cases presenting federal issues out of federal

court "simply because they appeared in state raiment." *Id.* at 2368.

       The cases Biovail cites do not articulate a rule barring removal of state-law cases

with federal predicates.  Rather, remand was appropriate in those cases because defendants did

not identify sufficiently substantial and disputed issues of federal law.  *See, e.g., Horowitz* v.

*Marlton Oncology, P.C.*, 116 F. Supp. 2d 551, 553 (D.N.J. 1999) (granting remand where the

"sole purported basis" for removal was "the fact that the New Jersey RICO claims depend upon

proof of violations of" various federal statutes);[14] *Bourke* v. *Carnahan*, No. C2-03-144, 2003

U.S. Dist. LEXIS 13399, at *10 (S.D. Ohio July 1, 2003) ("Here, the nature of the federal

question at issue . . . is ultimately of a limited nature arguing against a characterization as

'substantial.'"); *Patterman* v. *Travelers, Inc.*, 11 F. Supp. 2d 1382, 1388-89 (S.D. Ga. 1997)

(issues regarding "federal mail and wire fraud statutes . . . [were] not sufficiently substantial to

confer federal question jurisdiction").[15]

---

[14]   In *Horowitz*, plaintiff was a physician whose license was suspended because the defendant
clinics and doctors had allegedly engaged in fraudulent Medicare billing.  Although Ms.
Horowitz alleged violations of various federal statutes to support her state-law RICO claim,
the *Horowitz* case did not present substantial or significant issues of federal law.  It also did
not involve an allegation of an attempt to manipulate the securities markets.

[15]   *See also Graham Commercial Realty, Inc.* v. *Shamsi*, 75 F. Supp. 2d 1371, 1373 (N.D. Ga.
1998) ("[A]sserting violations of federal criminal law as predicate acts to Georgia's RICO
act is *not sufficiently substantial* to confer federal question jurisdiction."); *Meinders* v. *Refco
Sec., Inc.*, 865 F. Supp. 721, 723 (D. Colo. 1994) ("[T]he presence of the claimed violation of
federal law as an element of the [Colorado RICO] claim *is not sufficiently substantial* to
confer federal-question jurisdiction."); *Stechler* v. *Sidley Austin Brown & Wood, LLP*, No.
Civ. A 05-3485(HAA), 2006 WL 90916, at *6 (D.N.J. Jan. 13, 2006) (adopting Magistrate
Judge's finding that "the proper interpretation of federal tax law is at most a relatively minor
issue, not an actually disputed and substantial one").  Other cases cited by Biovail are even
further afield or are no longer good law.  In *In re Bridgestone/Firestone, Inc. Tires Prods.*

Contrary to plaintiffs' contention, *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), is directly on point because it demonstrates that a state RICO action may properly be removed where the federal issue is a substantial one. In *Ayres*, plaintiff sued under Georgia's RICO statute, asserting defendants' failure to make disclosures allegedly required by the federal Vehicle Safety Act constituted predicate acts of federal mail and wire fraud. The court denied remand, holding that the determination of whether defendants' conduct violated the federal mail and wire fraud statutes required the resolution of a substantial federal issue. *Id.* at 519 (citing *Ormet Corp.* v. *Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (finding that federal question jurisdiction existed where contract dispute required interpretation of Clean Air Act); *see also Milan Express Co.* v. *Western Sur. Co.*, 886 F.2d 783, 787 (6th Cir. 1989) (finding that federal question jurisdiction existed where claim for proceeds of surety bonds prescribed by Interstate Commerce Commission required interpretation of federal statutes and regulations); *West 14th St. Commercial Corp.* v. *5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("In construing the Condominium Relief Act in a state cause of action, the federal issue is decisive because upon that Act's construction the vindication of rights and definition of relationships created by federal law depends.").

Biovail is also wrong when it argues that remand should be granted because it "could not have asserted these violation of federal law as direct claims in federal court" because

---

*Liab. Litig.*, 203 F. Supp. 2d 1032 (S.D. Ind. 2002), plaintiffs did not plead federal violations as predicate acts and merely referenced the violation of a federal statute as evidence of manslaughter: "[I]n our cases, the predicate acts . . . are numerous counts of state-law based manslaughter, *rather than any federal crimes*." 203 F. Supp. 2d at 1036 (emphasis added). And in *Local 1 FLM-FJC* v. *Caputo*, No. 86 Civ. 3839, 1988 U.S. Dist. LEXIS 1253, at *5-6 (S.D.N.Y. Feb. 17, 1988), the court did not reach the issue of whether the federal questions presented were substantial because the court erroneously interpreted *Merrell Dow* to hold that removal is proper only where there is a private right of action for the federal question. The Supreme Court in *Grable* expressly rejected this interpretation of *Merrell Dow*. 125 S. Ct. at 2365.

"[t]here is no private right of action for violations of the federal mail- and wire- fraud statutes."
(Pl. Mem. at 18.)  Plaintiffs ignore the fact that there is a private right of action under the federal
securities laws.  Also, this argument runs directly counter to the Supreme Court's holding in
*Grable*, in which the Court expressly rejected the view that the absence of a private right of
action is "dispositive of the 'sensitive judgments about congressional intent,' required by §
1331." 125 S. Ct. at 2370.  *Grable* left undisturbed cases from several courts holding that
removal was proper despite the fact that the plaintiffs in those cases could not have sued under
federal law in the first place.[16]  And although plaintiffs cite *Merrell Dow* to argue that "[t]he
absence of an express or implied federal remedy" should preclude removal (Pl. Mem. at 18), the
*Grable* Court expressly repudiated this interpretation of *Merrell Dow*.  125 S. Ct. at 2370.

Biovail also misses the point when it complains that "[e]xpanding federal
jurisdiction to encompass *any* state-law claim that somehow incorporated an underlying violation
of federal law . . . would subject the federal courts to" a parade of horribles.  (Pl. Mem. at 18-19.)
Our argument is much narrower.  Defendants do not contend that *any* state law claim that
implicates federal law is subject to removal, only those claims that raise substantial and disputed
issues of federal law.  In Biovail's case, its claim of a "stock market manipulation scheme"
belongs in federal court because it meets that standard.

In this regard, Biovail's reliance on *Stechler* v. *Sidley Austin Brown & Wood,
LLP*, C.A. 05-3486, 2006 WL 90916 (D.N.J. Jan. 13, 2006), is misplaced.  In *Stechler*, this Court

---

[16] *See, e.g.*, *West 14th Street Commercial Corp.*, 815 F.2d at 194 ("Even if plaintiffs had no
express right of action under the statute, their complaint would still present a federal question
sufficient to confer jurisdiction under 28 USC 1331."); *Ormet Corp.*, 98 F.3d at 806 (4th Cir.
1996) ("[F]ederal-question jurisdiction is not limited to cases where federal law creates the
cause of action."); *Suffolk* v. *Long Island Lighting Co.*, 549 F. Supp. 1250, 1257 (E.D.N.Y.
1982) ("The availability of a federal remedy is unnecessary to create 'arising under'
jurisdiction . . .").

noted that in *Grable* the Supreme Court reiterated the rule that a complaint does not have to

plead a federal cause of action for a federal court to exercise federal question jurisdiction.

"Instead, the question is, does a state-law claim necessarily raise a stated federal issue actually

disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities." *Id.* at \*5

(quoting *Grable*, 125 S. Ct. at 2368). This Court remanded the case, but only after finding that

the purported federal issue, "the proper interpretation of federal tax law[,] is at most a relatively

minor issue, not an actually disputed and substantial one." *Id.* at \*1. By contrast, Biovail's

claims raise several substantial issues of federal securities law.

In addition, in *Stechler* this Court found that exercise of federal jurisdiction would

not be consistent with the "congressionally approved balance of federal and state judicial

responsibilities" as it would open the door to "a legion of garden variety state-law malpractice

and other claims." *Id.* at \*1. This is because there was "nothing to distinguish th[e] case from

fairly routine state law malpractice claims . . . ." *Id.* at \*7 (quoting *Sheridan* v. *New Vista,

L.L.C.*, 406 F. Supp. 2d 789, 794-95 (W.D. Mich. 2005)). By contrast, in the Biovail case, the

federal issues are ones in which federal courts have an intense interest, and the exercise of

jurisdiction would only open the federal courthouse to claims presenting substantial and

contested federal issues, which is precisely the result contemplated by the Supreme Court in

*Grable*.

Finally, Biovail argues that removal is improper because the Complaint "alleges

predicate violations of both federal and state law." (Pl. Mem. at 17.) A similar argument was

rejected in *Experian*, where plaintiff brought an unfair competition claim under California state

law based on "defendants' unfair, unlawful and deceptive business acts," including violations of

both state and federal antitrust laws. 2004 WL 1888769, at *4. Plaintiff moved to remand the case, arguing that the complaint did not necessarily present a federal claim because the California unfair competition statute defined unfair competition to include any "unlawful, unfair or fraudulent business act." *Id.* (quoting Cal. Bus. & Prof. Code § 17200). The court rejected this argument, observing that "plaintiff herein specifically alleged that defendants committed unlawful business practices by violating federal antitrust laws in addition to any state antitrust laws." *Id.* at *5.

None of the cases Biovail relies upon supports the broad proposition that the mere presence of any state-law predicate in a state-law RICO action automatically defeats removal jurisdiction.[17] (*See* Pl. Mem. at 17.) To the contrary, as the Fifth Circuit noted in *Howery* v. *Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001), "whether a federal issue embedded in the matrix of a state law claim will support federal question jurisdiction entails a pragmatic assessment of the federal interest at stake." 243 F.3d at 917. Plaintiffs allege violations of federal law, the resolution of which necessarily involves substantial federal issues. Under the "pragmatic assessment" counseled by the Fifth Circuit in *Howery* and reaffirmed by the Supreme Court in *Grable*, this case is precisely the sort of case in which the federal interest is strongest.

---

[17] The cases cited in Biovail's brief do not concern state RICO, and in any case are easily distinguished. In *Christianson* v. *Colt Indus.*, 486 U.S. 800 (1988), the plaintiffs only referred to patent law to explain what motivated defendants to commit an antitrust violation. By contrast, Biovail directly invokes the federal securities laws and the mail and wire fraud statutes in order to establish a required element of its claim. In *Rains* v. *Criterion Sys., Inc.*, 80 F.3d 339 (9th Cir. 1996), the plaintiff brought a claim for wrongful termination in violation of public policy and cited to Title VII merely to demonstrate a broad and clear antidiscrimination policy. Accordingly, resolution of the *Rains* plaintiff would not have required an adjudication of each and every intricacy involved in a Title VII action. And in *Howery* v. *Allstate Ins. Co.*, 243 F.3d 912, 917-18 (5th Cir. 2001), the court found that "no federal right [was] an element of Howery's state claim."

Biovail is the master of its Complaint and it, like the plaintiff in *Experian*, chose to plead its claim by alleging violation of both state and federal law. By proceeding in this manner, Biovail injected several significant issues of federal law into this lawsuit and subjected its "market manipulation" to removal to federal court.

## II.

## BIOVAIL'S COMPLAINT IS REMOVABLE UNDER SLUSA

Title I of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") provides that "'[n]o covered class action' based on state law and alleging 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security' 'may be maintained in any State or Federal court by any private party.'" *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*, 126 S. Ct. 1503, 1506 (2006) (citing § 101(b), 112 Stat. 3227 (codified at 15 U.S.C. § 78bb(f)(1)(A))). Where a plaintiff purports to file such an action, SLUSA provides that the case may be removed to federal court. 15 U.S.C. § 78bb(f)(2). Thus, a case is removable under SLUSA if it involves (1) a covered class action, (2) a covered security, and (3) "(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security, or (B) that the defendant used or employed any manipulative or deceptive device or contrivance" (4) "in connection with the purchase or sale of a covered security." *See* 15 U.S.C. § 78bb(f)(1). As the Third Circuit explained in *Rowinski* v. *Salomon Smith Barney Inc.*, 398 F.3d 294, 297-98 (3d Cir. 2005), "[t]he SLUSA removal provision . . . is jurisdictional. It creates an express exception to the well-pleaded complaint rule, conferring federal removal jurisdiction over a unique class of state law claims. . . . No matter how an action is pleaded, if it is a 'covered class action . . . involving a covered security,' removal is proper."

All of the requirements for SLUSA removal are satisfied here. Biovail's stock is a "covered security" under SLUSA as it is authorized for listing on the New York Stock

23

Exchange.  15 U.S.C. § 78bb(f)(5)(E); 15 U.S.C. § 77r(b)(1); Cmplt. ¶ 16.  Also, the gravamen

of Biovail's Complaint is an alleged "stock market manipulation scheme," which charges that

Defendants made "misrepresentations" and "employed a manipulative device" "in connection

with" their sales of Biovail securities.[18]

        In addition, this action satisfies SLUSA's "covered class action" requirement.

This is because SLUSA's definition of "covered class action" extends beyond traditional Rule 23

class actions and includes any case where a plaintiff seeks to recover damages for others, even

though the plaintiff does not seek class certification.  Biovail's Complaint repeatedly invokes

alleged injuries to Biovail's shareholders as it seeks to recover Biovail's decline in market

capitalization (*i.e.*, its drop in stock price)—which is direct injury to Biovail's shareholders, not

Biovail.  Because Biovail seeks to recover damages that belong to its shareholders, this action

falls within SLUSA's broad "covered class action" definition.

### A.    Congress Intended SLUSA To Create Uniform National Standards For Securities Fraud Actions

        Over the past decade, Congress has acted to restrict, and federalize, securities

fraud lawsuits.  In 1995, in response to a flood of meritless securities fraud actions, Congress

passed the PSLRA, in order to curb "nuisance filings," "targeting of deep pocket defendants,

vexatious discovery requests and manipulation by class action lawyers of the clients whom they

purportedly represent." *Dabit*, 126 S. Ct. at 1510-11.  Among other things, the PSLRA imposed

---

[18]  Courts have broadly construed SLUSA's "in connection with" requirement.  For example, the Third Circuit has held that state-law claims alleging that a firm had systematically disseminated biased analyses of certain securities in order to favor the firm's investment banking clients alleged misrepresentations "in connection with" the purchase or sale of covered securities, as required for SLUSA preemption, because the alleged scheme would only work if it caused the purchase and sale of securities. *Rowinski*, 398 F.3d at 302-04.  The court noted, "[w]here the defendant in a covered class action is alleged to have misrepresented the value of nationally traded securities to the investing public, SLUSA requires that federal fraud standards govern the claims."  398 F.3d at 302.

heightened pleading requirements on plaintiffs pursuing securities fraud class actions, limited

recoverable damages and attorney's fees, and provided a "safe-harbor" for certain "forward-

looking statements." *Id.* at 1511; *see also Rowinski*, 398 F.3d at 298-99 (discussing history of

SLUSA and the PSLRA); *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 107-08 (2d

Cir. 2001) (same).

        In an effort to avoid the PSLRA's restrictions, plaintiffs' lawyers began to file

securities actions under state law, and often in state courts. *Dabit*, 126 S. Ct. at 1511.[19] In

response to this phenomenon, Congress passed SLUSA "in order to prevent certain State private

securities class action lawsuits alleging fraud from being used to frustrate the objectives of the

[PSLRA]" and to "enact national standards for securities class action lawsuits involving

nationally traded securities." H.R. Conf. Rep. No. 105-803, at 2 (1998). As the Third Circuit

has noted, "Congress envisioned a broad interpretation of SLUSA to insure the uniform

application of federal fraud standards." *Rowinski*, 398 F.3d at 299.

        Following the passage of SLUSA, plaintiffs once again looked for ways to evade

Congress's mandate for uniform federal standards for securities fraud mass actions. One ploy

was to bring cases in state court alleging that defendants had fraudulently induced them to *hold*

securities—as opposed to buying or selling them. Plaintiffs argued that these "holder" cases

were not subject to SLUSA removal and preemption because they did not allege fraud "in

connection with the purchase or sale of a covered security" as required by the statute. Last term,

in *Dabit*, the Supreme Court rejected that argument, finding that "holder" actions are covered by

---

[19]  *See also* H.R. Conf. Rep. No. 105-803, at 1 (1998) (following passage of the PSLRA, "a number of securities class action lawsuits . . . shifted from Federal to State courts . . . [and] this shift [] prevented that Act from fully achieving its objectives"); *Rowinski*, 398 F.3d at 298 ("Congress concluded that plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions in state rather than federal court.").

SLUSA's far-reaching mandate. The Court explained that SLUSA must be read broadly in light of "the magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities." 126 S. Ct. at 1509. "A narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose, viz., 'to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the PSLRA.'" *Id.* at 1513 (citing SLUSA's legislative history).

Plaintiffs have also tried to evade SLUSA preemption by urging a narrow definition of "covered class action." As we show in the following section, those efforts also have been repeatedly rebuffed as courts have read SLUSA's "covered class action" definition broadly to prevent evasion of Congress's policy of uniformity through artful pleading.

**B.   Biovail's Demand To Recover Lost Market Capitalization Satisfies SLUSA'S "Covered Class Action" Requirement**

Biovail argues that SLUSA removal should not apply to its case because its action "is not a class action" but merely a "case brought by two corporations." (Pl. Mem. at 21.) SLUSA, however, does not require lawsuits to be traditional Rule 23 class actions in which a named plaintiff seeks certification of a class. Instead, Congress intended "that [SLUSA] be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition." S. Rep. No. 105-182, at 8 (1998). Where, as here, a corporate plaintiff files an action alleging fraud in the purchase or sale of securities and seeks relief for damages suffered directly by shareholders (*i.e.*, the decline in share value), the action is the functional equivalent of a securities class action and is governed by SLUSA.

This is not the first action in which a plaintiff has attempted to circumvent SLUSA by dressing what is effectively a mass action for securities fraud in unusual procedural

garb.  For example, courts have held the following actions to be "covered class actions" within

the meaning of SLUSA, even though they were not actions in which a named plaintiff sought

certification of a Rule 23 class:

- An action by a trustee for a trust created by a bankruptcy court to pursue potentially recoverable assets on behalf of electing shareholders, where the plaintiff trustee tried to avoid SLUSA by stating the trust is "one person."  The court disagreed, holding the role was "no different than that of any shareholder class representative."  *Cape Ann Investors LLC* v. *Lepone*, 296 F. Supp. 2d 4, 9-10 (D. Mass. 2003).

- An action filed by an investment manager to recover damages on behalf of its clients, over whose accounts it had trading discretion, where plaintiff did not seek class certification but asserted that it had direct authority to bring the action for its beneficial-owner clients based on powers of attorney.  The courts held that the claims were preempted by SLUSA because plaintiff sought to recover on a representative basis, even if not within a traditional Rule 23 class action.  *BT Sec. Corp.* v. *W.R. Huff Asset Mgmt. Co., L.L.C.*, 891 So. 2d 310, 316 (Ala. 2004); *W.R. Huff Asset Mgmt. Co., LLC* v. *Kohlberg Kravis Roberts & Co.*, 234 F. Supp. 2d 1218, 1226-27 (N.D. Ala. 2002).

- An action filed by individuals who were appointed as representatives of the sellers in a purchase agreement and were given the power to act on behalf of the sellers in any dispute concerning the purchase agreement.  Since "Plaintiffs' complaint . . . seeks to recover damages on a representative basis on behalf of plaintiffs and other unnamed parties similarly situated," the claim constituted a covered class action, despite plaintiff's protestations that it was not seeking class certification by simply exercising contractual powers to vindicate the rights of the sellers.  *Golub* v. *Hilb, Rogal & Hobbs Co.*, 379 F. Supp. 2d 639, 643 (D. Del. 2005).

- Ten securities fraud actions brought in separate state courts, removed to federal court, and consolidated.  Although none of the actions sought class action certification, the court held that this mass action met SLUSA's covered class action definition.  *In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2004).

Although Biovail's case also is not a traditional Rule 23 class action, it meets

SLUSA's definition of a covered class action because Biovail seeks to recover damages for lost

market capitalization as a result of market manipulation, which is an injury that only Biovail

shareholders have standing to seek to recover.  Biovail describes "the core" of Defendants'

alleged "scheme" as a "massive and fraudulent disinformation campaign attacking Biovail"

which brought about "sought-after stock price declines." (Cmplt. ¶ 2).  Indeed, over 90% of the

27

damages Biovail seeks to recover ($4 billion of its $4.5 billion demand) are for its lost market

capitalization—the amount by which its stock price allegedly decreased because of Defendants'

alleged wrongdoing.[20]

      In its Complaint, Biovail acknowledges that this drop in Biovail's stock price is

injury to Biovail's shareholders, and not Biovail itself, as it charges that "[i]n addition to the

massive damages Biovail sustained . . . investors in Biovail stock were saddled with huge

losses." (Cmplt. ¶ 13.)  Biovail concedes that its investors, not the Company, were the ones

*directly* impacted by the market capitalization decline, charging that Biovail shareholders (and

the shareholders of other "targeted companies") "lost many billions of dollars as a *direct*

consequence of this stock manipulation scheme." (Cmplt. ¶ 42 (emphasis added).)[21]

      Biovail reiterated that it is pursuing this action on behalf of its shareholders in an

interview on the CBS television program "60 Minutes," when its CEO described this lawsuit as

"fighting back for [Biovail's] shareholders."[22]  This is not just the usual CEO bluster about

sticking up for company shareholders.  Instead, as we explain in Part I.B., Biovail's stock is not

the company's property, it is its shareholders' property; a decline in Biovail's stock does not

---

[20]  Specifically, Biovail alleges that Defendants' acts reduced "plaintiffs' market capitalization
by over $4 billion by causing existing investors to sell their shares in Biovail stock, and
causing potential new investors to refrain from purchasing Biovail stock" (Cmplt. ¶ 184) and
it seeks recovery for this lost "market capitalization." (Cmplt. ¶¶ 173, 179.)  A firm's market
capitalization is the trading price of its shares times the number of outstanding shares.

[21]  The Complaint repeatedly refers to Biovail's investors as the victims of Defendants' conduct.
(*See, e.g.*, ¶ 106 (describing Defendants' alleged scheme as working to the "detriment of
Biovail's legitimate investors"); ¶¶ 141 & 149 (alleging that "[t]he Enterprise's scheme
inflicted enormous damage on Biovail's reputation, business, employees, and investors");
¶ 150 ("The Enterprise's scheme also resulted in substantial losses on the part of New Jersey
shareholders who had invested in the publicly-traded parent corporation of BPI, a New Jersey
business."); ¶ 162 (alleging that Defendants' conduct induced "Biovail shareholders and
others to rapidly sell their Biovail shares and artificially depress[ed] the price of the common
stock"); ¶¶ 167 & 172 (describing injury to Biovail shareholders).).

[22]  *See* Nocera Article, Silodor Decl. Exh. A.

directly injure Biovail itself, it injures its shareholders; and Biovail does not have standing to

recover lost market capitalization damages, only its shareholders do. (*See* pp. 8-9, *supra*.) By

demanding recovery for lost market capitalization, this action is a disguised attempt to assert

claims for injury to Biovail's shareholders and, as such, is a "covered class action" under

SLUSA. As the Supreme Court has warned, "[t]he artful pleading doctrine allows removal

where federal law completely preempts a plaintiff's state-law claim," even though the plaintiff

may have tried to disguise the basis of federal preemption to avoid removal to federal court.

*Rivet* v. *Regions Bank of Louisiana*, 522 U.S. 470, 471 (1998); *see also Rowinski*, 398 F.3d at

300 (holding that plaintiff's artful pleading of state-law claims to avoid federal preemption

should not be allowed "to undermine SLUSA's goal of uniformity—a result manifestly contrary

to congressional intent").[23]

---

[23]   In *Felton* v. *Morgan Stanley Dean Witter & Co.*, 2006 WL 1149184, at *5 (S.D.N.Y. May 2, 2006), the court explained:

> Ordinarily, a plaintiff is the master of his complaint, and whether or not a federal claim exists must be decided based on the face of the complaint's allegations. However, an exception to this "well-pleaded complaint" rule exists where federal law completely preempts a given field, and, in enacting SLUSA, "'Congress could not have spoken more clearly' about its intention 'to completely preempt the field of certain types of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims.'" *Dabit I*, 395 F.3d at 33 (vacated in part on other grounds) . . . . As a result, "when SLUSA's conditions have been satisfied, the plaintiff has necessarily invoked federal question jurisdiction, even though he [or she] did not wish to, and the court must dismiss for failure to state a claim because SLUSA has preempted the state law basis for the claim." *Id.* at 33-34 . . . . "Under SLUSA, then, we must look beyond the face of the complaint to analyze the substance of the allegations made." *Id.* at 34 (citing *Spielman* and *Dudek* v. *Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002) (where complete preemption applies, "plaintiff may not avoid federal question jurisdiction and the preemption of state law claims by artfully concealing the federal question in an otherwise well-pleaded complaint under state law")); *see also Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 265 (S.DN.Y. 2004) ("After *Spielman*, it is now clear that courts

Congress intended that all "mass actions" involving securities that trade on national exchanges should be brought in federal court and under federal law. Because Biovail seeks to recover damage for the loss of value in its stock that it attributes to Defendants' alleged market manipulation, and because only Biovail's shareholders have standing to seek those damages, this action qualifies as a "covered class action" under SLUSA. It should be removed to federal court under SLUSA's removal provision.

III.

### BIOVAIL'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED

Defendants have demonstrated that remand should be denied. In any case, in *Martin* v. *Franklin Capital Corp.*, 126 S. Ct. 704 (2005), the Supreme Court rejected the view that plaintiffs who prevailed in remand motions were presumptively entitled to attorney's fees under 28 U.S.C. § 1447(c). Instead, the Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." 126 S. Ct. at 708.

In this case, Defendants have raise two substantial grounds that warranted removal, one pursuant to "arising under" jurisdiction and the other pursuant to SLUSA preemption. For all of the reasons stated in this motion, those arguments constitute a sufficiently "reasonable basis" for Defendants' removal motion so as to preclude Plaintiffs' fee demand.

Conclusion

For all of the foregoing reasons, the S.A.C. Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand.

Dated: June 23, 2006

---

must probe the plaintiff's pleading to determine whether SLUSA preemption applies.").

LOWENSTEIN SANDLER PC

By: _____
    Gregory B. Reilly
    Deborah A. Silodor
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone  973.597.2500

– and –

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
Daniel J. Kramer
Lewis R. Clayton
Theodore V. Wells, Jr.
1285 Avenue of the Americas
New York, New York 10019
Telephone  212.373.3000

– and –

McCARTER & ENGLISH, LLP

By: _____
    Andrew T. Berry
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone 973.622.4444

– and-

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
787 Seventh Avenue
New York, New York 10019
Telephone 212.728.8000

*Attorneys for the S.A.C. Defendants*